HARLEY B. GRAFF, ADMINISTRATOR OF THE ESTATE OF MARGARET E. GRAFF, DECEASED, ET AL., APPELLANTS, v. MARGARET E. GRAFF, SPECIAL ADMINISTRATRIX OF THE ESTATE OF ROBERT V. GRAFF, DECEASED, ET AL., APPELLEES.

138 N. W. 2d 644

Filed November 26, 1965. No. 35968.

Lyle B. Gill, for appellants.

Richards, Yost & Schafersman, Sidner, Lee, Gunderson & Svoboda, and T. L. Grady, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

Robert V. Graff, mentioned herein, was married twice. His first wife's name was Margaret E. Graff. After her death in 1958 he married Margaret E. Coffee who became Margaret E. Graff also. As Margaret E. Graff she appeared and answered as special administratrix and thereafter executrix of the estate of Robert V. Graff. We will refer to her herein, however, as Margaret Coffee Graff to distinguish her from the first Margaret E. Graff.

The plaintiffs and appellants, Harley B. Graff, Administrator of the Estate of Margaret E. Graff, deceased, Harley B. Graff, and Vida Marie James, brought this action in the district court for Stanton County against Margaret Coffee Graff, Special Administratrix of the Estate of Robert V. Graff, deceased, Margaret Coffee

Graff, John C. Thor, and Joan Thor, defendants. Plaintiffs' petition sought to establish and enforce a trust on a certain note and mortgage given by the defendants John C. Thor and Joan Thor, husband and wife, on certain lands in Stanton County, Nebraska, as well as on certain payments thereon alleged to have been fraudulently converted by Robert V. Graff from the estate of his first wife, Margaret E. Graff, and for an accounting of such property. The petition alleged that Margaret E. Graff had been the owner of the mortgaged premises, that she and Robert V. Graff, her husband, had conveyed the premises to the Thors, and that certain payments set out and the mortgage mentioned represented the purchase price therefor. The petition was subsequently amended to state that the signatures of Margaret E. Graff on the deeds to the Thors were a forgery.

Margaret Coffee Graff as special administratrix filed a special appearance objecting to the jurisdiction of the court over her person for the stated reason that she was a resident of another county than that in which the action was brought and that the joinder of her as administratrix with the resident defendants was colorable only. The special appearance was overruled but the special administratrix and Margaret Coffee Graff as executrix thereafter attempted to preserve it in subsequent pleadings by so stating therein.

Answers were filed by the special administratrix and the executrix with quite similar allegations. The answer of the executrix alleged the plaintiffs had failed to file any claim in the estate of Robert V. Graff, that notice to creditors had been given, and the time to file claims had expired. It alleged the claims of the plaintiffs were barred by the statute of non claims and of limitations, and by the laches of the plaintiffs. It alleged the real estate mortgage mentioned and the payments set out were given in settlement of the purchase price of a farm sold to the defendants Thor; that the farm was owned by Robert V. Graff and title thereto was

temporarily placed in the name of Margaret E. Graff as part of a proposed estate planning arrangement which was never carried out, and title was kept in her name as a matter of convenience; and that she assented to its sale, joined in the deed, released her interest in the premises to the Thors, and transferred any deferred payments owed by them to Robert V. Graff. It stated the proceeds of the sale were placed in a joint bank account of the spouses and used in payment of the expenses of the family, including medical care of Margaret E. Graff, except certain portions loaned to the plaintiff Harley B. Graff. The cross-petition of the executrix alleged Robert V. Graff had loaned $15,000 to the plaintiff Harley B. Graff who had promised to repay the same and that $7,250 was owing thereon. The prayer of the answer was that the petition be dismissed. The cross-petition sought to recover judgment against the plaintiff Harley B. Graff for the balance of his loan.

Margaret Coffee Graff separately filed in turn a special appearance, demurrer, and answer similar to those made by her as personal representative of the Robert V. Graff estate. Plaintiffs filed a reply to the answers denying all new allegations of fact.

A trial was had in district court. Evidence was submitted by the plaintiffs who rested. No evidence was offered by the defendants. Thereupon separate motions were made by Margaret Coffee Graff, individually and as executrix, to dismiss the plaintiffs' petition which were sustained by the court. The trial court found the signatures of Margaret E. Graff on the deeds were not forgeries. With consent of the plaintiffs, title to the real estate involved was quieted in the defendants Thor subject to the balance due on the Robert V. Graff mortgage, and thereafter the court dismissed the Thors from the proceedings also. It continued the action on the cross-petition of the executrix against Harley B. Graff.

The evidence shows Robert V. Graff and Margaret E. Graff, his first wife, were married for 51 years prior

to the wife's death in 1958. On November 21, 1952, Robert V. Graff deeded to Margaret E. Graff the 400 acres of land involved in the sale hereafter mentioned. The deed recited it was given for $1 and other good and valuable consideration. Margaret E. Graff suffered a heart attack on December 5, 1957, and a stroke sometime after the middle of that month. On February 19, 1958, Margaret E. Graff and Robert V. Graff purportedly signed an acceptance of a written offer contained in a uniform purchase agreement executed by John C. Thor to purchase 400 acres of land in Stanton County. The recited consideration was $60,000. It is alleged in the plaintiffs' petition that the premises were then subject to a mortgage of $12,600 which was admitted in the answer of the defendants Thor. The Graffs agreed to carry back $22,000 on the southwest quarter of Section 9, Township 23, Range 2 East, a part of the 400 acres. On March 31, 1958, Robert V. Graff entered into a second uniform purchase agreement with respect to the premises last described with John C. Thor and his wife, Joan Thor. The second agreement was entered into because the tenant of the particular land described thereon had refused to vacate. It was not executed by Margaret E. Graff. Floyd James, the husband of the plaintiff Vida Marie James, was present when the second contract was executed. He took no part in the negotiation but knew what was going on. It provided for the payment of $27,000, with $1 down and the balance at the option of the buyers before February 28, 1960, Robert V. Graff agreeing therein to carry back $22,000 at 5 percent interest, $2,000 payable 2 years and $20,000 payable 5 years after closing.

On February 21, 1958, two deeds were executed purportedly by Margaret E. Graff and Robert V. Graff, husband and wife, covering in the aggregate the 400 acres described in the first uniform purchase contract. John C. Thor was the grantee in one and Joan Thor in the other. These deeds were regularly acknowledged

by the grantors as husband and wife. Both deeds were recorded February 26, 1958.

Margaret E. Graff died November 14, 1958. She left a will. As far as it is of significance here, it devised and bequeathed a life use of all her property, real or personal, to Robert V. Graff and provided that upon his death the remainder should be divided equally between her children, Harley B. Graff and Vida Marie James. It nominated Robert V. Graff as executor. Robert V. Graff made a report to the county court of Dodge County, Nebraska, of jointly owned property of Margaret E. Graff which was sworn to December 13, 1958. It listed a residence in Fremont, Nebraska, and certain oil and mining stock. It alleged that the decedent had no property in her own name. On January 15, 1959, the county court entered an order finding that lawful notice had been given and the will was admitted to probate. It further found there was no known property belonging to the deceased upon which the will could operate. It adjudged that further administration be dispensed with and no executor be appointed.

On March 3, 1959, after the death of Margaret E. Graff, the Thors executed a promissory note and mortgage on the land described in the second purchase agreement for $20,000 to Robert V. Graff. After entering into the first purchase agreement John C. Thor testified he paid Robert V. Graff by check $10,000, being the downpayment therein mentioned. Thereafter he paid Robert V. Graff on said contracts or the mortgage given thereon by checks payable to R. V. Graff. They were later endorsed by Graff or his attorneys for deposit. The dates and amounts of the respective checks were as follows: $10,400 on March 26, 1958; $5,000 on March 3, 1959; $2,000 on March 25, 1960; $1,100 on March 25, 1960; $2,000 on March 1, 1961; $1,950 on March 2, 1962; and thereafter he paid $1,900 by check to the R. V. Graff estate which was endorsed by Margaret Coffee Graff, administratrix. Some of the checks were partially or

wholly interest on the deferred amount owing at the time. Thor testified there was $16,000 plus interest still owing on the mortgage.

On January 1, 1960, Robert V. Graff married Margaret Coffee Graff. He died on February 18, 1963. Letters as administrator de bonis non with the will annexed on the estate of Margaret E. Graff, deceased, were issued to Harley B. Graff from the county court of Dodge County on December 26, 1963.

John C. Thor testified that he was engaged in the real estate, insurance, and farming business. When Robert V. Graff first conferred with him, he came with the purpose of either listing or selling the farm and at that time Mr. Graff told him, "* * * his wife had had a heart attack, and he was afraid she wouldn't live very long, and he wanted to sell the farm and get the money into a joint account, so he wouldn't have to go through an estate with it." He testified he saw Robert V. Graff sign the first purchase agreement but Margaret E. Graff did not sign it in his presence. In regard to the delivery of the deeds, he testified: "Q (By Mr. Gill) When were these deeds delivered to you, Exhibits 8 and 9? A Shortly after we made the purchase agreement. I was surprised Mr. Graff mailed me the deeds. Q The purchase agreement was made February 19. How soon thereafter, how many days or weeks? A Couple of days, I think. Q At that time had you paid the purchase price for this farm? A No. We had only paid $10,000.00."

Plaintiff Vida Marie James testified she was the daughter of Robert V. Graff and Margaret E. Graff. She had learned her mother had a will the night after she died but never saw it, never received a copy of it, and was not informed of its contents until shortly before bringing the action. The plaintiff Harley B. Graff testified he knew his mother left a will but did not see it until it was shown to him by his lawyer on December 13, 1963. He had received a copy of the notice to probate the will by mail.

Winsor C. Moore, an examiner of questioned documents, testified concerning the results of a study made by him in which he compared the signature of Margaret E. Graff on the first uniform purchase contract and the two deeds to the Thors with her signature on other documents identified in evidence as genuine and with her name on an income tax return signed by Robert V. Graff as her attorney-in-fact. He gave it as his opinion that the signatures on all three documents studied were not those of Margaret E. Graff, and further that it was his opinion that her name appearing on each was in fact written by her husband, Robert V. Graff.

The plaintiffs' assignments of error are quite general. They contend that the trial court erred in sustaining the motions to dismiss the action as to the several defendants and that its judgment was contrary to the law and the evidence. They argue that the plaintiffs' evidence made a prima facie case. Several matters will be discussed which are raised by the briefs and appear to relate to these contentions. Unless otherwise specified, our discussion will be limited to the errors assigned as they affect the executrix of the estate of Robert V. Graff.

In Armbruster v. Stanton-Pilger Drainage Dist., 165 Neb. 459, 86 N. W. 2d 56, this court held: "If a defendant in an action in equity moves at the close of the evidence of the plaintiff for a dismissal of the action for want of proof to support a judgment, he admits the truth of the evidence and any reasonable conclusion deducible from it."

The trial court found that the deeds from Margaret E. and Robert V. Graff to the Thors were not forgeries. Plaintiffs maintain the unrefuted testimony of the expert witness on questionable documents, that in his opinion the signatures of Margaret E. Graff on the deeds were not her signature and in fact were written by her husband, was sufficient to raise an inference that her signatures thereon were forged. The deeds appear to be regularly acknowledged. No attempt was made to

impeach the certificate of the notary. In an Annotation in 57 A. L. R. 525, the general rule is stated: "* * * that a person, by appearing before an officer and making a formal acknowledgment of an instrument, thereby adopts as his signature his name written to the instrument by someone else, * * *." Many cases are there cited as authority for the statement. We are not referred to a decision of this court on precisely this question, but this court has held: "Where a person's name is signed to an instrument for him, at his direction and in his presence, by another, the signature becomes his own." In re Estate of Winslow, 115 Neb. 553, 213 N. W. 819. In Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355, this court said: "When the party executing a deed or mortgage knows that he is before an officer having authority to take acknowledgments, and intends to do whatever is necessary to make the instrument effective, the acknowledging officer's official certificate will be, in the absence of fraud, conclusive in favor of those who in good faith rely on it." The rules set out in the cases cited from this court underlie that stated in the annotation which is adopted and applied by us now. The evidence offered is not sufficient to raise an inference that Margaret E. Graff did not properly execute the deeds.

The plaintiffs contend the trial court erred in sustaining the motion to dismiss the action as to the defendant Margaret Coffee Graff as executrix. The motion of defendants was based on several grounds. Defendants first asserted that any claim of the plaintiffs was one against the estate of Robert V. Graff and had to be filed against his estate. In the case before us the plaintiffs made claim to the property as beneficiaries of the estate of Margaret E. Graff. They sought to impress a trust on property in the hands of the personal representative of the Robert V. Graff estate belonging to the estate of Margaret E. Graff. Their claim was adverse and hostile to the estate of Robert V. Graff. The dis-

trict court has exclusive jurisdiction to adjudicate controversies between the executor and persons claiming adversely to the estate. See, Lutcavish v. Eaton, 166 Neb. 268, 89 N. W. 2d 44; Brown v. Applegate, 166 Neb. 432, 89 N. W. 2d 233; Father Flanagan's Boys' Home v. Graybill, 178 Neb. 79, 132 N. W. 2d 304.

Another ground of the defendants' motion to dismiss was that plaintiffs' cause of action was barred by the 4-year statute of limitations set forth in section 25-207, R. R. S. 1943. Plaintiffs contend the trial court was in error if this was its reason for sustaining the motion. The defendants maintain the plaintiffs who were beneficiaries under the will of Margaret E. Graff could have maintained an action against Robert V. Graff for the property in his lifetime and his death would not toll the running of the statute, citing Carden v. McGuirk, 111 Neb. 350, 196 N. W. 698, and McNeill v. Schumaker, 94 Neb. 544, 143 N. W. 805. In the case before us, however, the property in question was given by the will to Robert V. Graff for life. In Criswell v. Criswell, 101 Neb. 349, 163 N. W. 302, L. R. A. 1917E 1103, this court reviewed its early cases with respect to the statute of limitations as it applied to the rights of remaindermen in actions against a life tenant with respect to real estate. It held that the statute of limitations commenced running against a remainderman from the time he knew or might have known that the possessor claimed the entire estate in his own right, or from the time when in the exercise of reasonable care for his own rights, he should have known that the land was so held by the one in possession. In Mohr v. Harder, 103 Neb. 545, 172 N. W. 753, this court in its syllabus stated: "The statute of limitations does not begin to run against a remainderman until knowledge is clearly brought home to him that another is claiming title adversely."

In the case before us the defendants claim that the plaintiffs' receipt of a copy of the notice to probate the will or knowledge that there was a will was sufficient

to charge them with knowledge of their rights in their mother's estate. If they had inquired and procured a copy of the will it would only have shown that their father had a life estate in all of their mother's property. If they had examined the proceedings in county court in her estate further they would have been confronted with an apparent showing that their mother left no property upon which the will operated. Even had the real estate records at the courthouse been examined it would have disclosed no property standing in their mother's name at her death. This would be true both as to the real estate or the mortgage thereon. The relation of a life tenant to his remaindermen is that of a quasi-trustee. See, Attebery v. Prentice, 158 Neb. 795, 65 N. W. 2d 138; Trute v. Skeede, 162 Neb. 266, 75 N. W. 2d 672. In the present case we hold that where one nominated as executor in a will under which he receives a life estate in property with the remainder over to others, reports to the county court that there is no property on which the will can operate whereupon further probate is dispensed with, the statute of limitations does not commence to run against an action brought by the remaindermen to recover such property from the life tenant who has placed it in his own name until knowledge is clearly brought home to the remaindermen that there is such property. Under the evidence adduced the action was not barred by failure to proceed against Robert V. Graff in his lifetime. Neither from the record is laches indicated.

Inasmuch as our decision determines that a new trial is necessary, it should be said that as to the payments received in the lifetime of Margaret E. Graff, she would have had an action against Robert V. Graff to recover them if she did not give them to him. See Trayer v. Setzer, 72 Neb. 845, 101 N. W. 989. Her death would not toll the running of the statute of limitations. See, Carden v. McQuirk, *supra;* McNeill v. Schumaker, *supra.* This applies to the $10,000 downpayment made February

19, 1958, and the $10,400 payment made March 26, 1958.

The defendant Margaret Coffee Graff, executrix, contends that in any event the errors urged by the plaintiffs should not be considered because her special appearance, objecting to the trial court's jurisdiction over her person which she attempted to preserve in her pleading, should have been sustained. It is not necessary to discuss the grounds urged by the executrix as a basis for her claim. It is only necessary to state that the answer and cross-petition filed by her prayed for affirmative relief. Where a defendant files a cross-petition asking for affirmative relief, it constitutes a general appearance and gives the court jurisdiction of the cross-petitioner. See O'Hara v. Frederickson Building Corp., 166 Neb. 206, 88 N. W. 2d 643.

The defendants urge that Robert V. Graff made a gift of the land by his deed and in such a case it did not become the property of his wife, Margaret E. Graff. They cite section 42-201, R. R. S. 1943, which in part reads as follows: "The property, real and personal, which any woman in the state may own at the time of her marriage, rents, issues, profits or proceeds thereof and real, personal or mixed property which shall come to her by descent, devise *or the gift of any person except her husband* or which she shall acquire by purchase or otherwise shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to disposal by her husband or liable for his debts; * * *." (Italics supplied.) Although this section has been amended the portion quoted reads the same as it did when it was construed by this court long ago with respect to a similar contention. In Dayton Spice-Mills Co. v. Sloan, 49 Neb. 622, 68 N. W. 1040, this court, in a decision interpreting it, said: "The married woman's act being for the purpose of extending, and not contracting or limiting, the rights of married women in this state, will not be held to have abrogated the equitable rule which upheld gifts from husbands to wives made

when the husband was solvent, and which did not impair the existing rights of creditors." See, also, First Nat. Bank of Wahoo v. Havlik, 51 Neb. 668, 71 N. W. 291. In 41 C. J. S., Husband and Wife, § 148(e), p. 620, the text, in considering gifts from a husband to the wife, states that a gift sustainable in equity or valid under statutory provisions is good between the parties, their heirs, representatives, or next of kin. The deed from Robert V. Graff to Margaret E. Graff conveyed title and she became the owner of the land if it was a gift. Neither it is necessary here to discuss its provisions which recite it was given for $1 and other good and valuable consideration.

A careful review of the evidence discloses that the title to the land conveyed to the Thors was in Margaret E. Graff. Payments on the purchase price were received by Robert V. Graff after the death of the owner. The mortgage given for the balance carried back was taken in the name of Robert V. Graff after the owner's death also. There is evidence from which a reasonable inference arises that Robert desired to have the land sold and the proceeds placed in a joint account in the name of him and his wife before her death, and that he hurried the delivery of the deeds for that purpose. This plainly indicates he considered it his wife's property. It is inferable that he attempted to procure the avails from the land by such means to avoid probating of his wife's estate and the application of her will with respect to the proceeds. This inference is strengthened from his report to the county court that there was no property belonging to the estate upon which the will operated. We think there was evidence that presents a prima facie cause of action against the executrix of his estate. The trial court erred in dismissing the plaintiffs' petition as to the executrix on her motion at the close of the plaintiffs' case.

The plaintiffs contend the court erred in dismissing the petition as to the defendant Margaret Coffee Graff,

individually. We have reviewed the evidence and find no instance where this defendant individually received any of the proceeds either from the sale or belonging to the estate of Margaret E. Graff. Plaintiffs' counsel stated they would not resist the motion in this respect in the trial court. We do not think they should be permitted to assert such resistance on appeal after declining to do so at the trial. There was no error in the dismissing of the case as to this defendant.

The plaintiffs claim the trial court erred in dismissing the defendants Thor from the action. The court quieted title to the premises in them subject to the mortgage and plaintiffs' counsel stated in open court they had no objection thereto. A temporary restraining order, which plaintiffs had obtained to prevent the Thors from making payments upon the mortgage to the executrix, had been dissolved by an agreement which provided the executrix receive, receipt for, and place the proceeds in a separate account pending the litigation. Under the circumstances the Thors no longer appear to be necessary parties to the litigation. There was no error in the court's ruling.

The judgment of the trial court is reversed insofar as it dismissed the plaintiffs' petition as against Margaret Coffee Graff as executrix of the Estate of Robert V. Graff and the cause remanded with direction to grant a new trial on the issues between the plaintiffs and such executrix. It is affirmed with respect to the dismissal of the action as to the defendants Thor and Margaret Coffee Graff, individually.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.