RANCHERS AND FARMERS LIVE-STOCK AUCTION COMPANY OF CLOVIS, NEW MEXICO, et al., Appellants,

v.

FIRST STATE BANK OF TULIA, Texas, et al., Appellees.

No. 8536.

Court of Civil Appeals of Texas, Amarillo.

Nov. 24, 1975.

Rehearing Denied Dec. 29, 1975.

Stokes, Carnahan & Fields, Robert N. Carnahan, Amarillo, Rowley, Hammond, Murphy & Rowley, Clovis, N. M., for appellants.

Morehead, Sharp & Tisdel, Charles G. White, Plainview, for appellees.

ROBINSON, Justice.

The First State Bank of Tulia sought to garnish cattle and the proceeds held by the Tulia Livestock Auction, Inc. for J. E. Littlefield. Littlefield and the Ranchers and Farmers Livestock Auction Company of Clovis, New Mexico, intervened, alleging that the Clovis auction company had a purchase money security interest in the proceeds and cattle under the Uniform Commercial Code portion of the Texas Business and Commerce Code. The trial court granted the bank's motion for summary judgment and denied that of the intervenors. The intervenors appeal. Affirmed.

In addition to affidavits and depositions, the summary judgment proof included a stipulation of facts by the parties. A chronology of the relevant events follows.

*NOVEMBER 21, 1973.* J. E. Littlefield purchased the cattle from the Ranchers and Farmers Livestock Auction Company of Clovis, New Mexico. Both the president and the general manager of the Clovis auction company testified, without equivocation, in their depositions that sales through the auction were cash sales. The president of the Clovis auction testified that it was the custom in the business for title not to pass to the buyer until checks given in payment for the cattle cleared. Littlefield paid for the cattle by check on a Colorado bank. He had insufficient funds on deposit to cover the check at the time it was given and the check remained unpaid at the time of trial. He received a "Purchase Sheet" containing the language "This contract constitutes a Bill of Sale to the above described

livestock, payment for which is hereby acknowledged." Littlefield shipped the cattle to the Tulia Livestock Auction for resale.

*NOVEMBER 23, 1973.* A writ of garnishment seeking indebtedness to or effects of J. E. Littlefield was served on the Tulia Livestock Auction. At the time the garnishment was served, the Tulia auction had on hand $30,240.61 from the sale of part of the cattle and 40 head which had not been sold. By mistake, eight head were sold for $1,082.40 after the writ of garnishment was served. The parties on a later day agreed to the sale of the remaining cattle. Those cattle sold for $6,257.48. Subject to the contention by appellant that the Texas garnishment statute is unconstitutional, the stipulations show a valid garnishment for collection of a valid, unpaid judgment in excess of the amounts held by the Tulia auction.

*AFTER NOVEMBER 25, 1973, AND BEFORE NOVEMBER 29, 1973.* After the garnishment, Littlefield told the Clovis auction company that his check to them would not clear, and executed for the Clovis auction company a security agreement and financing statement back-dated to November 21, 1973, and properly describing the cattle in question.

*AFTER NOVEMBER 25, 1973, AND NOT MORE THAN 10 DAYS AFTER NOVEMBER 21, 1973.* The financing statement (actually executed after November 25, 1973) was filed in the office of the County Clerk of Swisher County, Texas, on November 29, 1973. The exact date on which the statement was filed in the Office of the Secretary of State does not appear, but it is stipulated that the filing was within 10 days of November 21, 1973.

*DECEMBER 3, 1973.* On November 28, 1973, the Clovis auction company put in the mail, addressed to the Tulia auction company, an instrument entitled "DEMAND OF SELLER FOR GOODS RECEIVED BY BUYER ON CREDIT WHILE INSOLVENT ON NOVEMBER 21, 1973." By the instrument the Clovis auction company

claimed a right to return of the livestock under Section 2.702 of the Texas Uniform Commercial Code. This instrument was received by the Tulia Livestock Auction on December 3, 1973, more than 10 days after the November 21, 1973 date of the delivery of the cattle to Littlefield by the Clovis auction.

The applicable statutory law is contained in Chapter 2, Sales, and Chapter 9, Secured Transactions, of the Uniform Commercial Code, Title I, Business and Commerce Code, Vernon's Ann.Civ.Stat.[1]

The code section 2.511 provides that payment by check is conditional and is defeated *as between the parties* by dishonor of the check on due presentment. The Uniform Commercial Code Comment under Section 3.802, discussing the effect of conditional payment, states:

3. It is commonly said that a check or other negotiable instrument is "conditional payment." By this it is normally meant that taking the instrument is a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is "revived." Subsection (1)(b) states this result in terms of suspension of the obligation, which is intended to include suspension of the running of the statute of limitations. On dishonor of the instrument the holder is given his option to sue either on the instrument or on the underlying obligation.

Section 2.507 provides that where payment is due on delivery of goods, the buyer's right as against the seller to retain or dispose of them is conditional upon his making the payment due. The Uniform Commercial Code Comment, with regard to the effect of delivery conditioned upon payment, states:

3. Subsection (2) deals with the effect of a conditional delivery by the seller and

in such a situation makes the buyer's "right as against the seller" conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this Article. Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. The provision of this Article for a ten day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here.

Section 2.702 provides that the right to reclaim goods delivered on credit to an insolvent buyer is waived unless the seller makes demand within 10 days, except in those cases where misrepresentation of solvency has been made to the particular seller in writing within three months before delivery.

 The seller's right to reclaim under Section 2.702 is not a security interest within the purview of Chapter 9 on secured transactions. *In Re Mel Golde Shoes, Inc.,* 403 F.2d 658 (6th Cir. 1968). Acceptance of a check does not change a cash sale into a credit transaction. *In Re Helms Veneer Corporation,* 287 F.Supp. 840 (W.D.Va. 1968). Construing sections of the Virginia Uniform Commercial Code, identical to the sections of the Texas Uniform Commercial Code, the court in *Helms Veneer* stated:

We interpret § 2–507 and § 2–511 of the Virginia U.C.C. as giving the seller a right to reclaim his goods from the buyer where a cash transaction has occurred, and a check, taken in payment by the seller, was dishonored. However, the right to reclaim is limited to a ten day period from the delivery of the goods as provided by § 2–507 by virtue of its cross reference to § 2–702. If the right to reclaim has not been exercised within that specified time period, the right is waived. The seller's remedy is then on

---

1. The Sections of the Uniform Commercial Code referred to are those in effect at the time of the transaction and before amend-

ments which became effective January 1, 1974.

the instrument as well as for breach of contract.

■ Intervenors' pleadings do not state a cause of action for reclamation. They claim a perfected purchase money security interest. It is their contention that the written security agreement which was prepared and signed subsequent to the time the writ of garnishment was served relates back to the time of the Clovis sale; that a security agreement attached at the time of that sale; and that it was perfected by filing within 10 days of the delivery of the cattle to Littlefield.

Intervenors rely on Subsection (b) of Code Section 9.301. Code Section 9.301 provides in part:

(a) Except as otherwise provided in Subsection (b), an unperfected security interest is subordinate to the rights of

\* \* \* \* \* \*

(2) a person who becomes a lien creditor without knowledge of the security interests and before it is perfected;

\* \* \* \* \* \*

(b) If the secured party files with respect to a purchase money security interest before or within ten days after the collateral comes into possession of the debtor, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.

(c) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like

. . . . .

Section 9.303 provides that a security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. Section 9.302 sets out the requirement for the filing of a financial statement in order to perfect the security interest. The time at which a security agreement attaches is determined by the following provisions of Section 9.204.

(a) A security interest cannot attach until there is an agreement (Subdivision (3) of Section 1.201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

Section 1.201(3) defines "agreement" to mean:

. . . (T)he bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this title.

Section 9.203 provides, subject to exceptions not relevant here, that a security interest in collateral in possession of the debtor is not enforceable against the debtor or third parties unless the debtor has signed a security agreement which contains a description of the collateral.

Applying the foregoing provisions of the code regarding sales and secured transactions, we conclude that there was no security agreement between Littlefield and the Clovis auction, either oral or written, at the time the writ of garnishment was served on November 23, 1973. The security interest attached sometime after November 25, 1973, and before November 29, 1973, when a security agreement was signed by Littlefield. At that point the three-fold requirement for attachment of the security interest—(1) agreement, (2) value given, and (3) rights of the debtor in the collateral—was met.

We conclude that under Section 9.301 the security interest of the Clovis auction company is subordinate to the rights of the garnishing lien creditor, the First State Bank of Tulia.

■ Intervenors further contend that the garnishment by the Tulia bank is void as an unconstitutional taking of property under *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct.

1983, 32 L.Ed.2d 556, reh. den., 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). In *Southwestern Warehouse Corp. v. Wee Tote, Inc.,* 504 S.W.2d 592 (Tex.Civ.App.— Houston [14th Dist.] 1974, no writ), the court held the Texas prejudgment garnishment statute unconstitutional, but stated as follows:

> . . . Sniadach and Fuentes are clearly inapplicable to post judgment garnishment. Article 4084, which freezes property after the writ of garnishment is served, is thus the only statute or article here examined which is unconstitutional and only to the extent that it freezes property without notice and hearing before judgment on the original claim.

Article 4076, Vernon's Ann.Civ.St. and the relevant rules of the Texas Rules of Civil Procedure are discussed in the court's opinion with regard to the applicability of the standard of *Fuentes.* Following the reasoning in *Wee Tote, Inc.,* we hold that the Texas post-judgment garnishment statute is not unconstitutional. See also, *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

■ Appellant-intervenors did not plead a cause of action for reclamation or a cause of action by virtue of regulations issued pursuant to the Packers and Stockyards Act of 1921, as amended. In the hearing on the motions for summary judgment, the burden was on the First State Bank of Tulia to meet intervenors' case as pleaded. *Torres v. Western Casualty and Surety Company,* 457 S.W.2d 50 (Tex.1970). The summary judgment evidence taken in the light most favorable to intervenors conclusively establishes the bank's cause of action and establishes that the claim pleaded by intervenors is subordinate to plaintiff bank's claim. Intervenors' points regarding a right to reclamation and rights under the Packers and Stockyards Act are asserted for the first time on appeal and are not properly before us. *Leonard v. Abbott,* 366 S.W.2d 925 (Tex.1963); *Simmons and Simmons Construction Co. v. Rea,* 155 Tex. 353, 286 S.W.2d 415, 417 (1955).

The judgment of the trial court is affirmed.