ERNEST J. PECK, APPELLEE, v. AUGUSTIN BROS. CO., A CORPORATION, APPELLANT.

279 N. W. 2d 397

Filed May 29, 1979. No. 42160.

Paul F. Festersen and Thomas F. Flaherty of Zweiback, Brady, Kasher, Festersen & Pavel, P. C., for appellent.

Noyes W. Rogers of Walter, Albert, Leininger & Grant, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

BOSLAUGH, J.

This is a replevin action initiated on September 29, 1967. On that date, 315 head of cattle were replevined by the plaintiff-seller, Ernest Peck, from the defendant-buyer, Augustin Bros. Co. of Shelby, Nebraska. Subsequent to the replevin, the defendant was adjudicated a bankrupt. The action remained pending on a special appearance filed by the defendant until May 31, 1977. The bankruptcy proceedings were completed on November 30, 1975.

After a trial on the merits in April 1978, the trial court directed a verdict for the plaintiff, except for the amount of defendant's downpayment. The defendant has appealed.

The evidence shows two contracts between the parties dated July 22, 1967, for the sale of cattle, with delivery to be made between September 15-20 "F. O. B. trucks" in Burlington, Kansas. A downpayment of $3,180 was given toward the purchase price of the cattle which were delivered by the plaintiff in Burlington, Kansas, on September 18, 1967. On the following day, the cattle arrived at the defendant's yards near Shelby, Nebraska. On that same day the seller prepared a draft on the defendant for the remainder of the sale price, $56,785, and deposited the draft at his bank in Thayer, Kansas. The draft was forwarded through normal banking channels and arrived in Columbus, Nebraska, on or about September 25, 1967. At about the time the draft arrived at the defendant's bank in Columbus, Nebraska, the defendant's line of credit was revoked and the draft

was dishonored by the defendant. The plaintiff came to Shelby on September 26, 1967, and demanded payment for the cattle or return of the cattle. When the defendant refused, the plaintiff commenced this action. The cattle were returned to the plaintiff on September 29, 1967.

The assignments of error allege that the trial court erred in finding that the plaintiff owned the cattle and had demanded payment or return of the cattle prior to replevin. The defendant also contends there was no valid service of summons upon the defendant; the plaintiff had no right to possession after delivery; the plaintiff had no security interest in the cattle and was not a secured creditor; the replevin was a voidable preference in bankruptcy; and the 1967 replevin procedure was unconstitutional. Finally, the assignments of error allege the trial court erred in refusing to allow damages to the defendant for its expenses in transporting and caring for the cattle and for interest on its downpayment.

After the defendant's special appearance had been overruled, the defendant answered and prayed for affirmative relief including damages. This constituted a general appearance and waived any objections to jurisdiction over the defendant's person. Schleuter v. McCuiston, *ante* p. 101, 277 N. W. 2d 667; Tietsort v. Ranne, 200 Neb. 651, 264 N. W. 2d 860 (1978); Swick v. Coslor, 194 Neb. 781, 235 N. W. 2d 639 (1975); Abel v. Southwest Cas. Ins. Co., 182 Neb. 605, 156 N. W. 2d 166 (1968); Graff v. Graff, 179 Neb. 345, 138 N. W. 2d 644 (1965). It is unnecessary to consider the defendant's contentions in regard to the special appearance.

The defendant argues that the Nebraska replevin statutes in 1967 were unconstitutional based upon the decision in 1972 in Fuentes v. Shevin, 407 U. S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). The defendant has not cited any case that would apply Fuentes, a

1972 decision, to a 1967 transaction. Constitutional invalidity is generally held to be prospective because "a retroactive application of Fuentes v. Shevin, *supra,* would work an injustice and a hardship upon [parties] who have lawfully acquired vested rights in the form of their state judgments." Douglas-Guardian Warehouse Corporation v. Posey, 486 F. 2d 739, at p. 743 (10th Cir., 1973). See, also, Kacher v. Pittsburgh Nat. Bank, 545 F. 2d 842 (3rd Cir., 1976). Furthermore, the replevin statutes as they existed in 1967 have since been amended and the constitutionality of the 1967 statutes is now a moot question. See §§ 25-1093 to 25-10,110, R. R. S. 1943 (Reissue 1975).

In deciding that the plaintiff had the right to reclaim the cattle, the trial court found that the plaintiff owned the cattle at the time of sale and had demanded their return prior to replevin. The defendant contends these findings are erroneous.

The record shows the plaintiff had purchased the cattle from a rancher in Kansas. The plaintiff then entered into a sales contract with another cattle feeder, Jay Crofoot of Lubbock, Texas. Crofoot testified at the trial that he had agreed to release the plaintiff from the contract for a share of the profits from the sale to the defendant. After the replevin, Crofoot purchased the cattle from the plaintiff. The evidence sustains the finding that the plaintiff owned the cattle and had demanded their return prior to the replevin.

The trial court also found that the sale was a credit transaction; that the seller was entitled to reclamation under the Uniform Commercial Code; that the seller had a perfected purchase money security interest in the cattle; and that the replevin was not a voidable preference under the Bankruptcy Act.

We reach the same result as the trial court did but for a different reason. The transaction was not a

credit sale. The contract provided the "balance of purchase price to be paid upon completion of contract." There was no extension of credit contemplated. Payment was due upon delivery and a statement for the balance due accompanied the cattle. The evidence is undisputed that both parties contemplated payment would be made by a draft drawn on the defendant by the plaintiff.

The concept of conditional payment by check is recognized by the Uniform Commercial Code. See §§ 2-507 (2), 2-511 (2), 2-511 (3), U. C. C. See, also, § 2-511, U. C. C., Comment 4: "This article recognizes that the taking of a seemingly solvent party's check is commercially normal and proper and, if due diligence is exercised in collection, is not to be penalized in any way. * * * Similarly the reason of this subsection should apply and the same result should be reached where the buyer 'pays' by sight draft on a commercial firm which is financing him." The code supplements "private agreements, including course of dealing, usage of trade, and course of performance." White & Summers, Uniform Commercial Code, § 2, p. 7 (1972). And the commercial meaning of the parties' agreement or conduct should reflect both their expectations as evidenced by their "course of dealing" and the understanding imparted to persons involved in particular commercial transactions in a given locality as a "usage of trade." See § 1-205, U. C. C., and Comments.

The plaintiff introduced evidence of his prior dealings with the defendant. All prior sales had been paid by drafts drawn by the plaintiff upon the defendant. Every draft had been deposited at the plaintiff's bank, forwarded through regular banking channels, and had always been paid. Glen Augustin, defendant's vice president, testified that all of its cattle purchases were paid by such customer drafts. The result in this case would have been the same if the defendant had paid for the cattle by its

check and the plaintiff would have deposited it in the Thayer, Kansas, bank on September 19, 1967.

A cash sale was pleaded in the reply and evidence of a cash sale was admissible. See § 1-205 (6), U. C. C., and Comment 10. A cattle marketing expert, Hugh Mactier, testified that legal tender is not a customary method of payment in the trade but that drafts and checks are commonly used because of the logistics of cattle transactions. Buyers are usually absent at the time of delivery which typically involves great distances and possibly several days of shipping preparations and weighing to determine the price of the cattle.

The testimony indicates that the parties intended their performance of this sale was to be no different than their prior transactions. The evidence establishes, as a matter of law, that such conditional sales, paid by drafts drawn in a commercially immediate time frame and treated as money in hand by the parties, are cash sales. The drawer of a dishonored draft is entitled to the legal remedies afforded an unpaid conditional cash seller. Compare cases involving checks drawn by cattle buyers within a similar time frame. Ranchers & Farmers Auction Co. v. Honey, 38 Colo. App. 69, 552 P. 2d 313 (1976); Matter of Samuels & Co., Inc., 526 F. 2d 1238 (5th Cir., 1976), wherein checks were apparently drawn several days later as discussed in Wiseman, Cash Sellers, Secured Financers and the Meat Industry: An Analysis of Articles Two and Nine of the Uniform Commercial Code, 19 B. C. L. Rev. 101, at p. 119 (1977).

The replevin statutes in conjunction with the code, §§ 25-1093 et seq., R. R. S. 1943, provide a means for the seller to repossess his goods if the buyer defaults on a conditional cash sale. See § 2-507 (2), U. C. C.: "Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of

them is conditional upon his making the payment due." See, also, § 2-511 (3), U. C. C.: "Subject to the provisions of this act on the effect of an instrument on an obligation (section 3-802), payment by check [or instrument] is conditional and is defeated as between the parties by dishonor of the check on due presentment." See, also, § 2-511, U. C. C., Comment 4. See, e. g., Gicinto v. Credithrift of America, 219 Kan. 766, 549 P. 2d 870 (1976); Martin Buick v. Colo. Spgs. Bk., 184 Colo. 166, 519 P. 2d 354 (1974); Greater Louisville Auto Auction v. Ogle Buick, Inc., 387 S. W. 2d 17 (Ky., 1965); Ranchers & Farmers Auction Co. v. Honey, *supra;* Ranchers & Farm Liv. Auc. Co. v. First St. Bank, 531 S. W. 2d 167 (Tex. Civ. App., 1975); In re Helms Veneer Corporation, 287 F. Supp. 840 (D. C. Va., 1968); 2 Anderson, Uniform Commercial Code (2d Ed., 1971), §§ 2-507:8 and 2-507:13; Nordstrom, Law of Sales, §§ 166, 170, and 171 (1970).

Reliance on the above authority and section 2-507 (2), U. C. C., to establish the cash seller's rights is specifically limited to the present circumstances. There is no question of the cash seller's priority under article 9 of the Uniform Commercial Code, as no secured creditor is claiming against the seller's interest. Although there may be support for the lower court's determination that a purchase money security interest arose by virtue of section 9-113, U. C. C., we do not reach that issue. See Wiseman, Cash Sellers, Secured Financers and the Meat Industry: An Analysis of Articles Two and Nine of the Uniform Commercial Code, 19 B. C. L. Rev. 101, at pp. 146-52 (1977).

As a final argument, defendant asserts that reclamation is a voidable preference in bankruptcy. See Bankruptcy Act, Chapter 6, Title 11 U. S. C., § 96 (1970). "A voidable preference is a transfer of nonexempt property made or suffered by the bankrupt for or on account of an antecedent debt within four

months of bankruptcy to or for the benefit of a creditor and while the debtor was insolvent, if the effect of the transfer was to enable the transferee to obtain a greater percentage of his debt than other creditors of the same class and if the transferee, at the time of the transfer, had reasonable cause to believe that the debtor was insolvent. Although it would appear possible to fit the right to reclamation within this definition, the major commentators are in almost unanimous agreement that the seller's right to reclaim normally is not a voidable preference." Sebert, The Seller's Right to Reclaim: Another Conflict between the Uniform Commercial Code and the Bankruptcy Act?, 52 Notre Dame Law. 219, at p. 233 (1976).

Here, the reclamation under section 2-507 (2), U. C. C., voided the buyer's ownership rights in the cattle and "the return thereof does not constitute a preferential transfer of property to a *creditor* of the bankrupt." 3, Part 2, Collier on Bankruptcy, ¶ 60.18, at p. 844 (14th Ed., 1977). Application of the bankrupt's voidable preference would actually be a windfall to the buyer and his creditors because the estate would be enlarged, without cost, to the extent of the proceeds from the sale of the delivered goods. King, Voidable Preferences and the Uniform Commercial Code, 52 Cornell L. Q. 925, at p. 939, n. 53 (1967). Reclamation is not a voidable preference because the title is voidable; thus, there is no transfer on account of an antecedent debt. See, Matter of Telemart Enterprises, Inc., 524 F. 2d 761, at p. 764 (9th Cir., 1975), cert. denied sub nom. Holzman v. Alfred M. Lewis, Inc., 424 U. S. 969, 96 S. Ct. 1466, 47 L. Ed. 2d 736 (1976).

The defendant was entitled to a return of the downpayment by the seller's decision to reclaim the cattle. The trial court awarded judgment to the defendant for the $3,180 downpayment but denied interest because no demand for repayment was made.

The failure to demand return of the downpayment does not preclude the recovery of interest. The award of $3,180 to the defendant is affirmed but the defendant should be allowed interest at the statutory rate of 6 percent from the date of reclamation, September 29, 1967, i. e., the time when defendant had no further interest in the cattle. See § 45-102, R. R. S. 1943 (Reissue 1968); and § 2-507 (2), U. C. C.

The matter of damages for care and transportation of the cattle was not argued in the defendant's brief. The issue need not be considered on appeal. Rule 8 a 2 (3), Revised Rules of the Supreme Court, 1977.

The judgment of the District Court is modified to allow interest to the defendant at the rate of 6 percent from September 29, 1967, on $3,180. As modified the judgment is affirmed.

AFFIRMED AS MODIFIED.