Kenneth D. SORRELS and Central Arkansas Livestock Sales, Plaintiffs-Appellees,

v.

TEXAS BANK AND TRUST COMPANY OF JACKSONVILLE, TEXAS, et al., Defendants-Appellants.

No. 76–4126.

United States Court of Appeals, Fifth Circuit.

July 2, 1979.

---

Emerson Stone, Jr., Jacksonville, Tex., Brian E. Berwick, Austin, Tex., for defendants-appellants.

Charles H. Clark, Tyler, Tex., for plaintiffs-appellees.

Before JONES, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

This is a diversity case based on fraudulent misrepresentations. Defendants-appellants are Texas Bank and Trust Company of Jacksonville, Texas, and its president, E. R. Gregg. Plaintiffs-appellees are the Sorrels Cattle Company, an Arkansas cattle-trading partnership of Kenneth Sorrels and Sherman Durham, and Central Arkansas Livestock Sales (CALS), an Arkansas auction barn partnership of Sherman Durham and others. Texas Bank was the inventory lender for K. R. Grantham, a Texas cattle trader, and Gregg personally supervised his account.

On February 15, March 7, and March 14, 1973, Grantham purchased cattle from CALS, paying with checks in the respective amounts of $4,000, $10,000, and $13,853.56. On March 6 and March 12, Grantham purchased cattle from Sorrels, paying with checks in the respective amounts of $7,015.31 and $11,459.92. The $4,000 check cleared without problem, but plaintiffs subsequently learned that the other four checks had been dishonored. Plaintiffs contacted bank president Gregg about the dishonored checks, no sooner than March 17,

but no later than March 19.[1] Although there was a conflict in the evidence the jury found that Gregg fraudulently misrepresented Grantham's credit standing to the plaintiffs, causing them to forego any legal remedies then available with respect to the cattle sales. The $10,000 check was eventually honored, but the remaining three checks totalling $32,328.79 were not. The jury found that plaintiffs had been damaged to the extent of the full face value of the three dishonored checks.[2] Joint and several judgment in that amount together with interest, was entered against the bank, Gregg, and Grantham.[3]

The bank and Gregg appeal, alleging two grounds of error, both related to the issue of actual damages.[4] First, defendants urge that the district court erred in denying their alternative motions for a judgment notwithstanding the verdict or a new trial, contending that the evidence was insufficient to support the jury's implied finding that plaintiffs had any viable legal remedies available at the time of the fraudulent misrepresentations. Second, defendants claim that the district judge abused his discretion in denying their motion for a new trial, contending that the damages were excessive because the evidence was insufficient to support the jury's implied finding that any legal remedies then available would have resulted in 100 percent recovery for plaintiffs. For reasons set forth below, we reverse and remand for a new trial on the issue of damages.

■ With respect to defendants' first contention we note, as defendants conceded at oral argument, that we are foreclosed from reviewing the sufficiency of the evi-

dence on the issue of damages because defendants failed to make a proper motion for a directed verdict in accordance with Fed.R. Civ.P. 50(b). *E. g., Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 510 (5th Cir. 1970).[5] Defendants' failure to comply with Rule 50 does not totally dispose of this issue, however, because defendants moved in the alternative for a new trial on the same ground. Therefore, we must inquire whether the trial judge abused his discretion by overruling the motion for a new trial. *Little v. Bankers Life & Casualty Co., supra.* Ordinarily, we are reluctant to find that a trial judge abused his discretion in a situation such as this unless there is a complete absence of evidence to support the jury verdict on the belatedly challenged issue. *E. g., Hoover, Inc. v. McCullough Industries, Inc.*, 380 F.2d 798, 801 (5th Cir. 1967); *Pruett v. Marshall*, 283 F.2d 436 (5th Cir. 1960).

The question of whether there is any evidence to support the jury award of damages depends of course upon the theory on which the plaintiffs chose to proceed. This case was tried on the theory that on March 17/19 plaintiffs had legal remedies against Grantham valued at $32,328.79, which they forewent because of defendant Gregg's fraudulent misrepresentations. Therefore, we first inquire whether there is a complete absence of evidence on any of the elements necessary to support that theory. Since we find such an absence, we need not consider what we should do otherwise.

■ *Recovery of the cattle.* Since most of plaintiffs' efforts at trial were directed toward proving fraudulent misrepresentation, there is but scant evidence on the issue

---

1. From the record it appears that Durham called Gregg on March 17, and Sorrels spoke with Gregg on March 19.

2. The jury also awarded $4,500 in punitive damages against Texas Bank and Trust Company.

3. The district judge granted a directed verdict for plaintiffs against Grantham, and he does not appeal.

4. Although defendants' first issue is phrased in terms of insufficient evidence on the issue of

causation, the thrust of their argument is that plaintiffs failed to prove that they suffered any damages as a result of defendants' misrepresentations.

5. Nor did defendants raise the issue of sufficiency of the evidence in any other manner before verdict. *See Rawls v. Daughters of Charity of St. Vircent de Paul, Inc.*, 491 F.2d 141, 147 (5th Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974).

of damages. For the most part, plaintiffs merely asserted in a conclusory manner that on March 17/19, but for the bank's misrepresentation, they could have legally recovered 100 percent of the cattle that had not been paid for, a remedy admittedly worth $32,328.79. Since plaintiffs' rights to the cattle are governed by the Texas Uniform Commercial Code,[6] however, they should have argued their case and marshalled their proof with an eye toward its provisions. Instead they relied on pre-Code law to the effect that unpaid cash sellers had unlimited rights of repossession. But that is not the law under the Uniform Commercial Code. *See, e. g.,* Corman, *Cash Sales, Worthless Checks, and the Bona Fide Purchaser*, 10 Vand.L.R. 55, 69–70 (1956). Since plaintiffs misapprehended the legal theories under which recovery of the goods might have been possible, it is not surprising that the proof is sketchy and incomplete. Unfortunately, however, it is against the elements of possible Code remedies that we must measure the presence or absence of proof.

█ The UCC provides two methods for recovery of goods potentially applicable in this factual context: repossession under Chapter 9 or reclamation under Chapter 2. In order for plaintiffs to establish that on March 17/19 they had repossession rights as against Grantham under Chapter 9, it appears that they must demonstrate compliance with the requirements of Chapter 9, *e. g.*, section 9.203(a). *See* section 9.113; section 9.113 comments 3 and 5; *Ranchers & Farmers Livestock Auction Co. v. First State Bank of Tulia*, 531 S.W.2d 167 (Tex. Civ.App.—Amarillo 1975, writ ref'd n. r. e.) (by implication); J. White & R. Summers, Uniform Commercial Code 780–81. Since plaintiffs offered neither proof of such com-

pliance nor any legal arguments that compliance was unnecessary, we cannot uphold the jury verdict on the theory of repossession under Chapter 9.[7] We do not intend to foreclose this issue on remand, however; we merely conclude that on the basis of the legal and factual record before us the theory of repossession cannot support the jury award of damages.

█ Apparently it has not yet been decided in Texas whether cash sellers have reclamation rights under the UCC, but dictum in at least one Texas case seems to suggest that Texas courts would recognize such a right. *Ranchers & Farmers Livestock Auction Co. v. First State Bank of Tulia, supra*, 531 S.W.2d at 169–70. Therefore, assuming without deciding that Texas courts would interpret the UCC to provide reclamation rights for cash sellers, we will examine the record for evidence that would support such a theory. Here again we must measure the evidence against plaintiffs' burden of proving that they could have complied with any statutory requirements and, once questions were raised in the record, that their reclamation right had not been defeated by superior rights in third parties.[8] As to requirements for exercising the right of reclamation, it appears that section 2.507 incorporates by reference the strict ten-day limit of section 2.702. Section 2.507 comment 3. *See Matter of Samuels*, 526 F.2d 1238, 1245 (5th Cir.) (en banc), *cert. denied sub nom. Stowers v. Mahon*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Ranchers & Farmers Livestock Auction Co. v. First State Bank of Tulia, supra*, 531 S.W.2d at 169. Since delivery of the March 6 load of cattle occurred more than ten days before the earliest possible misrepresentations, it thus appears that plaintiffs' reclamation rights as to that load had al-

---

6. Tex.Bus. & Comm.Code Ann., Title I (Tex. UCC 1968). All citations and references to the UCC are to the Code as adopted in Texas.

7. Since plaintiffs did not meet the threshold burden of demonstrating repossession rights as against Grantham, we need not consider the possibility of superior rights in third parties under Chapter 9.

8. We are not implying that a plaintiff must routinely prove a series of negatives in order to recover in a situation such as this, but a plaintiff does have the burden of proof on those issues once they are raised by the evidence. *See Willow Hole Independent School Dist. v. Smith*, 123 S.W.2d 708 (Tex.Civ.App.—Waco 1938, writ ref'd).

ready expired. As to the other two loads of cattle, of course, there was sufficient proof that at the time of the fraudulent misrepresentations on March 17/19 plaintiffs could have complied with the ten-day limit because it was stipulated that the cattle were delivered on March 12 and 14 respectively.

■ With respect to the March 12 and 14 loads of cattle, our inquiry does not end with our conclusion that there was evidence to support plaintiffs' reclamation remedy as against Grantham. Under the UCC, the reclamation remedy cannot defeat the rights of a good-faith purchaser for value, a class that includes persons holding perfected security interests. Section 2.507(b); section 2.507 comment 3; section 2.403(a); *Matter of Samuels, supra.* There was evidence in the record raising the possibility that Grantham had already sold some of the unpaid-for cattle to good-faith purchasers, and there was also evidence suggesting that the bank had a prior superior security interest in the cattle. Therefore, in order to recover full face value, plaintiffs had to prove both (1) that Grantham had sold none of the March 12 and 14 loads of cattle to good-faith purchasers for value, and (2) that the defendant bank did not have a prior superior security interest in the cattle.[9]

Grantham gave uncontradicted testimony that at least some of the cattle purchased from plaintiffs in February and March had been sold to third parties before March 17/19. Of course, it is possible that the cattle so sold had come from the February 15 or March 7 loads that had been paid for, or from the March 6 load that was already beyond legal reclamation, but plaintiffs did not offer any evidence that such was the case. It is equally possible that the cattle sold before March 17 had depleted all or a substantial number of the March 12 and 14 loads that were still legally recoverable. In the complete absence of evidence on this issue, therefore, we could not uphold the jury verdict as to the March 12 and 14 loads of cattle under the theory of reclamation.

■ With respect to the existence of a prior security interest in the bank, there was in evidence a financing statement filed by the bank and signed by Grantham covering "all cattle now owned or hereafter acquired," which raises the possibility that the bank had a security interest in the cattle superior to the interests of the unpaid sellers.[10] *See Matter of Samuels, supra.* However, since we have already found that plaintiffs failed in essential proof on the ten-day-limit issue as to the first load of cattle, and on the sales-to-third-parties issue as to the second and third loads of cattle, we need not decide whether other evidence submitted by plaintiffs was competent to rebut this inference and thus preclude a finding of failure of proof on this issue also.[11]

*Attachment.* In addition to possible theories of repossession and reclamation, it is possible that sufficient evidence was introduced to support the verdict under a final theory—that but for the misrepresentation plaintiffs would have attached Grantham's property and thus secured sufficient property to collect on a simple judgment for breach of contract. By the time plaintiffs discovered the real state of affairs, however, Grantham had become "judgment proof," rendering any paper judgment worthless in fact.

■ In order to sustain the jury verdict under this theory, we must find proof that Grantham had property subject to attachment at the time of the fraudulent misrepresentation, and we must find proof of the

9. See footnote 7 explaining plaintiffs' burden of proof.

10. A financing statement, of course, is not necessarily proof of a valid security interest. *See* Note, *A Financing Statement as a Security Agreement Under the Uniform Commercial Code*, 26 Sw.L.J. 626 (1972).

11. In view of our conclusion that there was a complete absence of evidence on issues essential to establishing the legal right of reclamation, we need not decide whether Texas courts would indeed allow such a remedy. The parties are welcome to argue this issue on remand, if plaintiffs decide to rely on the remedy of reclamation.

value of that property. In appears that plaintiffs offered "some" evidence on the first element necessary for establishing damages under the attachment theory. They elicited testimony from Grantham that on March 17/19 he had "part" of plaintiffs' cattle, as well as cattle from other sources in his ownership and possession and that with the two groups together he had more cattle than he had purchased from plaintiffs. Unfortunately, however, plaintiffs did not offer any evidence whatsoever about the value of the cattle in Grantham's possession. Neither can we countenance a presumption that an equal number of cattle have equal value, especially in view of the evidence in the record indicating that the value of the cattle sold to Grantham by the plaintiffs ranged from a low of $197 to a high of $453. In the complete absence of evidence on the value of the property subject to attachment, we cannot uphold the jury award of damages under the theory of attachment.

■ In view of our conclusion on the first issue that there is a complete absence of probative evidence on key issues necessary for establishing damages in any amount under any legal remedy available to plaintiffs, it necessarily follows that with respect to the second issue we conclude that the damages were excessive. Therefore, under either ground of error, we find that the district judge abused his discretion in refusing to grant a new trial on the issue of damages. On remand, the trial will be limited strictly to the issue of damages, both actual and punitive, and the plaintiffs will have the burden of proving all elements necessary to establish both the existence of viable legal remedies on March 17/19 and the value of those legal remedies.[12]

REVERSED AND REMANDED.

12. The amount of punitive damages must also be relitigated because in Texas "the amount of exemplary damages should be reasonably proportioned to the actual damages found," and "[i]n the first instance, the amount to be awarded rests in the discretion of the jury." *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 707–08 (Tex.1970).