450 P.2d 463

Don PUGH, Plaintiff and Respondent,

v.

Cumon STRATTON and Ruby Anderson, Defendants and Appellants.

No. 11102.

Supreme Court of Utah.

Feb. 11, 1969.

Orville Isom, Cedar City, for appellants.

Tex R. Olsen, of Olsen & Chamberlain, Richfield, for respondent.

CALLISTER, Justice:

Plaintiff, a livestock grower, brought this replevin action to recover certain cattle purchased by defendants at a livestock auction. The trial court rendered a judgment in favor of the plaintiff, and defendants appeal.

Plaintiff owned and raised the cattle that are the subject matter of this action. The cattle bore the brand and earmarks of plaintiff, which had been duly registered with the Department of Agriculture of the State of Utah in accordance with Sec. 4–13–5, U.C.A.1953. Plaintiff delivered possession of the cattle to Howard J. Woodard in Kane County on about November 1, 1966, but no bill of sale accompanied this delivery in accordance with Sec. 4–13–17, U.C.A.1953. However, plaintiff did receive a sight draft which recited that the maker was Tri-State Livestock Auction by Howard J. Woodard, and incorporated therein the following:

KNOW ALL MEN BY THESE PRESENTS: That I, the Seller, signing hereunder and residing at ————— State of Utah, in consideration of the payment of the above draft, have bargained and sold and, by these presents, do bargain and sell unto the drawee and or State Bank of Southern Utah, Cedar City, Utah, the above described livestock, and hereby bind myself to warrant and defend the title to said livestock against any person claiming the same or any part of them.

Signed: Don Pugh

The draft was presented for payment and was dishonored and returned to plaintiff.

The cattle were delivered to Tri-State Livestock Auction in St. George, Utah, by Woodard, and were sold on about November 3, 1966, to defendants, who received documents stating the following:

We do not guarantee livestock against sickness or death. Our responsibility ceases when stock leaves the barn. Any statement or guarantee made as regards any livestock sold is the statement of the seller. We act as agents only.

The trial court found that neither the defendants nor their predecessor had received a bill of sale in accordance with Sec. 4–13–17, U.C.A.1953, and that plaintiff had retained ownership of the livestock and was entitled to possession thereof. The court further determined that plaintiff had committed no acts or made omissions which would estop him from asserting title to the cattle.

Defendants cite 70A–2–401(2) (Uniform Commercial Code, effective 1966) [1] to substantiate their argument that title passed to Woodard at the time of physical delivery of the cattle by plaintiff. They further contend that by virtue of 70A–2–403(2) and (3),[2] they received all rights

1. "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though

a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading * * *."

2. "(2) Any entrusting of possession of goods to a merchant who deals in goods of that

to the cattle by their purchase at the auction sale conducted in the ordinary course of business by Tri-State Livestock Auction.

On the other hand, plaintiff contends that the Utah Livestock Brand and Anti-Theft Act[3] provides the exclusive method for the transfer of ownership of cattle. In particular respondent relies on Sec. 4–13–17, U.C.A.1953, which provides:

Upon the sale, consignment, alienation or transfer of title of any livestock, by any person in this state, the actual delivery of such animals shall be accompanied by a written bill of sale from the vendor or the party selling to the party purchasing giving the number, sex, brands, and marks of each animal, date and place of purchase, signature and address of both seller and purchaser; provided, that any person so selling or transferring title to said livestock which are branded and marked with any brand and mark not the recorded brand and mark of person selling, shall provide proof of ownership from whom the livestock was purchased and the length of time held in his possession.

Sec. 4–13–2(5), U.C.A.1953, provides:

"Sell" includes offer for sale, expose for sale, have in possession for sale, exchange, barter or trade.

█ The issue of which statutory enactment controls in the instant action is specified by Sec. 70A–2–102, Uniform Commercial Code, which provides:

* * * nor does this chapter [Sales] impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

Therefore, we conclude that Title 4, Chapter 13, regulates the sales in the instant action.

█ Defendants contend that they are entitled to prevail under the provisions of the Livestock Brand and Anti-Theft Act; they cite Sec. 4–13–42, U.C.A.1953, which provides that all livestock entering an auction sales ring shall be inspected for brands and marks by an authorized inspector of the State Board of Agriculture and that it is unlawful for any auction sales ring to offer for sale any cattle until they have been inspected and released by the brand inspector. The act further provides that the operator of the auction sales ring shall furnish title to the livestock to the purchaser. Defendants reason that they had a

kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the de-

livery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

3. Title 4, Chapter 13, U.C.A.1953.

right to assume that the brand inspector had cleared the cattle for sale as the law provides and that the operator had the title to the cattle; and, therefore, plaintiff's brand did not put them on notice, and they had no duty to demand a bill of sale establishing proof of ownership as required in Sec. 4–13–17. Defendants fortify their argument by citing the legal principle that between two innocent parties, the one must suffer who gave possession to the dealer.

In the instant action, one may infer that either the brand inspector did not follow the statutory mandate [4] or the operator of the ring sold the cattle without the release of the brand inspector.

The import of the entire act compels one to conclude that Woodard's possession was unlawful from the time of delivery since he did not receive a written bill of sale.[5]

In Galeppi v. C. Swanston & Son,[6] plaintiff gave possession of his cattle to one Charles W. King, who gave plaintiff a check for the purchase price. Plaintiff refused to give a bill of sale until King's check was honored. Defendants' buyer bought the cattle from King. Plaintiff commenced an action for the conversion of the cattle against defendants; King had left for parts unknown.

The court stated that the title to the cattle was not to pass until plaintiff received payment in cash. The sale is to be treated as one for cash, and since King's check was dishonored, the title to the property as between King and plaintiff remained in the latter. The court observed:

* * * It may be conceded, however, that King was invested with such appearances of ownership that if he had complied with the provisions of the Hide and Brand Law the plaintiff would have been estopped to assert his own title thereto. Section 6, subdivision 2, of that law provides:

4. Sec. 4–13–31, U.C.A.1953: "If any brand inspector when acting by authority and under the provisions of this act in making inspection of any livestock, shall find any or all livestock bearing marks and brands contrary to the provisions of this act or if said owner or shipper shall fail to exhibit a bill of sale or other authority for the possession of said animals in said shipment as herein provided, the brand inspector shall forthwith declare them to be estrays and shall take possession of the same for the state board of agriculture and handle same as set forth herein."

5. Sec. 4–13–66 provides: "Any person who violates any of the provisions of this act shall be guilty of an indictable misdemeanor * * *." Sec. 4–13–19 provides: "Upon the trial of any person charged with theft, unlawful possession, the handling, or control of driving * * * of any livestock, * * * and the possession of such animals * * * by the accused without his having a duly written and executed bill of sale thereof, such as is required by the provisions of above sections, shall be prima face evidence against the accused that such possession was illegal."

6. 107 Cal.App. 30, 290 P. 116 (1930).

"No person shall buy or sell a bovine animal, * * * unless the seller give, and the buyer receive, at the time of the delivery of such animal, * * * a written bill of sale, giving the number, kind and marks and brands of each * * * animal, signed by the party giving the same and two subscribing witnesses."

Section 10, subdivision 6, reads as follows:

"Any person violating any provision of this act shall, unless otherwise provided herein, be guilty of a misdemeanor."

The court held that the sale was void because where a statute was designed for the protection of the public and prescribes a penalty, that penalty is the equivalent of an express prohibition, and a contract in violation of its provisions is void.

In the instant action, defendants are confronted by a consequence which the entire statutory enactment was designed to avoid, i. e., the brand inspector was accorded the duty to intercept anyone who had unlawful possession of the cattle and thus prevent a sale to an innocent purchaser. Unfortunately, the mechanics provided failed to function according to the legislative intention. Nevertheless, the mandate of the statute is clear, a transfer

of title is valid only if effected in conformity with Sec. 4–13–17, U.C.A.1953.

Defendants further contest the trial court's denial of their motion for a change of venue. Defendants contend that the cause of action arose where they resided, and that the court should have granted their motion in accordance with Sec. 78–13–7, U.C.A.1953.[7]

In Woodward v. Edmunds,[8] the court pointed out a distinction under the common law between a replevin in the *cepit* and a replevin in the *detinet*. In the former, there is both a wrongful taking and unlawful detention; and, if the taking were wrongful, no demand for the return of the property is necessary. The alleged invasion of the plaintiff's rights occurs at the time of taking. In the latter, the original taking was lawful, but the defendant is bound to relinquish possession upon demand. In such a case, there is no wrongful detention and no right of action until a demand is made and met with refusal. Therefore, the wrongful detention is the gist of the action, and the cause of action arises where the property is found and the demand made.

In the instant action, Woodard took delivery in violation of Sec. 4–13–17, U.C.A.1953, and his possession was unlaw-

7. "In all other cases the action must be tried in the county in which the cause of action arises, or in the county in which any defendant resides at the commencement of the action; * * *."

8. 20 Utah 118, 120, 122, 57 P. 848 (1899).

ful from the time of taking; therefore, the cause of action arose at that time. The judgment of the trial court is affirmed; costs are awarded to respondent (plaintiff).

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.