497 P.2d 240

Dale L. WILSON, for himself and Administrator of the Estate of Zelma M. Wilson, Deceased, Plaintiff and Respondent,

v.

Wesley BURROWS and Walker Bank & Trust Company, Defendants and Appellants.

Wesley BURROWS, Plaintiff,

Walker Bank & Trust Company, a Utah bank and trust company, Additional Party Plaintiff and Appellant,

v.

Leo WILSON and Bernice Wilson, his wife, Defendants and Respondents,

Estella M. McArthur, Intervenor.

No. 12394.

Supreme Court of Utah.

May 16, 1972.

Jones, Waldo, Holbrook & McDonough,
Roger J. McDonough, J. Wendell Bayles,
Salt Lake City, for appellants.

**438**

Olsen & Chamberlain, Ken Chamberlain, Richfield, for respondent.

Van Cott, Bagley, Cornwall & Mc-Carthy, David L. Gillette, Salt Lake City, for intervenor.

TUCKETT, Justice:

In this appeal we are only concerned with the issues raised in the court below pertaining to the claims of Walker Bank & Trust Company and Leo Wilson and Bernice Wilson, his wife, and Dale L. Wilson, Administrator of the Estate of Zelma M. Wilson, deceased. The court is called upon to make a determination as to the validity and priority of the rights of the Bank as a chattel mortgagee of a number of cattle and the Wilsons as conditional vendors.

During the months of May and June, 1966, one Wesley Burrows entered into negotiations with the Wilsons for the purchase of ranching operations in Garfield County. The negotiations were culminated on June 25, 1966, when uniform real estate contracts were entered into by Burrows as buyer, and the Wilsons as sellers of the ranches. The Zelma Wilson contract pertained to certain real estate, grazing permits, 137 head of cattle and miscellaneous farm equipment. The Leo and Bernice Wilson contract covered real property, grazing permits, 206 head of cattle with calves and miscellaneous farm equipment. The two herds of cattle were collected with the assistance of the Wilsons, branded with Burrows' brand and turned over to Burrows during May and June, 1966.

On June 15, 1966, Walker Bank granted to Burrows a loan in the sum of $80,000 which was secured by a livestock chattel mortgage from Burrows including the cattle covered by the Wilsons' real estate contracts. On June 21, Walker Bank filed its financing statement with the office of the Secretary of State covering the cattle pursuant to the provisions of the Uniform Commercial Code. Out of the proceeds of the loan partial payments were made to the Wilsons on the purchase contracts. No financing statement or other document was filed on behalf of any of the Wilsons covering their contracts until February of 1967.

Subsequently Burrows defaulted in his payments to the Wilsons and in 1968, the Wilsons repossessed their ranches and retook possession of the remaining cattle.

After a trial in the district court of Garfield County, findings and judgment were entered in favor of the Wilsons. The court determined that rights of the Wilsons as conditional vendors were prior to the security rights of the Walker Bank as mortgagee. From that decision Walker Bank appealed.

The 1965 Session of the Utah Legislature adopted the Uniform Commercial

Code which became effective on January 1, 1966. The transactions we are here concerned with fall within the provisions of the chapter of the Code known as Uniform Commercial Code—Secured Transactions. Livestock fall within the classification set forth in Section 70A–9–102(2) (3).

■ While it is undoubtedly true that under the sales contracts entered into by the Wilsons with Burrows as vendee, the Wilsons retained security interest in the property sold, it is also true that Walker Bank under its mortgage also acquired security interest in the livestock. The record clearly indicates that the Wilsons surrendered possession of the livestock to Burrows, and it is noted that the contracts contained the following statement:

> The Seller agrees to release all cattle to the Buyer so that he may put them under loan in his own name.

The trial court was of the opinion that this statement was insufficient to pass ownership of the cattle to Burrows as of the date of the contracts, but the statement coupled with the actual transfer of physical possession of the cattle to Burrows clearly indicates that the Wilsons intended to surrender possession to the vendee.

■ Assuming that the Wilsons by virtue of their contracts, and Walker Bank by virtue of its chattel mortgage, each obtained a security interest in the cattle, what are the priorities? There is no dispute in the record that Walker Bank perfected its security interest by filing its financing statement in accordance with the provisions of Section 70A–9–302 some months before the filing of a financial statement by the Wilsons. It would thus appear that the security interest of the Wilsons is subordinate to that of Walker.[1]

■■ It is the Wilsons' contention here that the Utah Livestock Brand and Anti-Theft Act[2] controlled the sale of the cattle to Burrows, and that the making of a contract in violation of its provisions was void. The purpose of the statute was aimed at the theft of livestock within the State and to impede the sale of stolen animals. It would not appear that the Legislature intended the statute to apply to sales such as we have here between the Wilsons and Burrows. In any event, the Wilsons cannot now claim that their contracts entered into with Burrows were not made in

---

1. McDonald v. Peoples Automobile Loan & Fin. Co., 115 Ga.App. 483, 154 S.E. 2d 886; Bloom v. Hilty, 427 Pa. 463, 234 A.2d 860; United States v. The Baptist Golden Age Home, D.C., 226 F.Supp. 892.

2. Section 4–13–1, et seq., U.C.A.1953; Pugh v. Stratton, 22 Utah 2d 190, 450 P.2d 463.

good faith. We must conclude that the contracts were not void.

As to the judgment entered by the court below insofar as it pertains to the issues respecting the claim of Walker Bank, the matter is reversed and remanded to the court below with directions to alter its findings and judgment in keeping with the views herein expressed. Appellant is entitled to costs.

CROCKETT, J., concurs.

ELLETT, J., concurs in the result.

CALLISTER, Chief Justice (dissenting).

I respectfully dissent, since the majority opinion overrules Pugh v. Stratton.[1] In the Pugh case the vendees of certain livestock urged that they had acquired title to the cattle under Sec. 70A-2-401(2), U.C.A.1953. On the other hand, the vendor claimed that he had retained ownership of the livestock and was entitled to possession because the Utah Livestock Brand and Anti-Theft Act, Title 4, Chap. 13, provides the exclusive method for the transfer of ownership of cattle. Sec. 4-13-17, U.C.A. 1953 provides:

*Upon the sale,* consignment, alienation or transfer of title of any livestock, *by any person* in this state, the *actual delivery* of such animals *shall be accompanied by a written bill of sale* from the vendor or the party selling to the party purchasing . . .. [Emphasis added.]

This court cited Sec. 70A-2-102, U.C.A. 1953:

. . . nor does this chapter [Sales] impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

Based on the foregoing provision, this court concluded that Title 4, Chap. 13, regulated livestock sales, and a transfer of title is valid only if effected in conformity with Sec. 4-13-17, U.C.A.1953. This court further deemed the possession of anyone as unlawful who takes delivery in violation of Sec. 4-13-17.

The majority opinion attempts to avert the consequences of Pugh v. Stratton by resorting to 70A-9-102(3), which provides:

The application of this chapter to a.security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.

The foregoing provision does not dispose of the issue that the vendee must acquire some type of interest upon which to execute a chattel mortgage. The majority opinion states that the vendor transferred physical possession to the vendee, but un-

1. 22 Utah 2d 190, 450 P.2d 463 (1969).

der Pugh v. Stratton, this was not *lawful possession*.

By necessity the vendee must depend upon Sec. 70A–2–401(2), U.C.A.1953:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place;
>
> . . . .

In the instant action, the defendant bank contends that it has priority by its earlier filing than the vendors, who have only a security interest in the livestock. If it were not for Title 4, Chap. 13, this assertion would be proper. Section 70A–9–113, U.C.A.1953 provides:

> A security interest arising solely under the chapter on Sales (chapter 2) is subject to the provisions of this chapter except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods

> (a) no security agreement is necessary to make the security interest enforceable; and
>
> (b) no filing is required to perfect the security interest; and
>
> (c) the rights of the secured party on default by the debtor are governed by the chapter on Sales (chapter 2).

Under Pugh v. Stratton, the debtor-vendee did not lawfully obtain possession of the cattle from their conditional vendors; therefore, under Sec. 70A–9–113, the vendors were not required to file to perfect their security interest. Under such circumstances, I cannot agree that the subsequent chattel mortgagee, the bank, has attained a position of priority.

I am cognizant of the impediments to commercial transactions as urged by the Utah Bankers in their amicus curiae brief. The solution to this problem is a legislative matter which should be resolved by that branch of government.[2]

HENRIOD, J., concurs in the views expressed in the dissenting opinion of CALLISTER, C. J.

---

2. The legislative response to Pugh v. Stratton appears to be reflected in an amendment to Title 14, Chap. 13, wherein rather than amending Sec. 4–13–17, they strengthened the act by Sec. 4–13–17.5 in 1971. This new section provides: "All changes of ownership through private sales or transactions, or at public auctions or commission houses, shall be *accompanied by a brand inspection certificate*."