**Gary J. WITHERSPOON, Plaintiff and Respondent,**

v.

**Jerry YECK et al., Defendants and Appellant.**

**No. 14285.**

Supreme Court of Utah.

June 23, 1976.

Walter Stewart pro se.

Richard Richards, Ogden, for plaintiff and respondent.

HENRIOD, Chief Justice:

Appeal from a replevin action judgment in favor of Witherspoon, having to do with ownership and possession of cattle under the Utah Livestock Brand and Anti-Theft Act.[1] Affirmed, with no costs on appeal.

On February 18, 1974, one Yeck offered to buy 35 head of cattle from Witherspoon, and paid him with what turned out to be two bum checks, and received a bill of sale. Two days later Witherspoon sought to cash the checks and learned the bad news that Yeck's account had been closed. The same day he contacted Yeck and warned him not to touch the cattle. He demanded and received back the bill of sale. At all times Witherspoon has retained the state Certificate of Registration,—a very important document under Title 4–13, supra. Learning of the worthlessness of the checks, Witherspoon notified the sheriff, the Highway Patrol, the County Attorney and the bank holding a security interest in the cattle.

On February 21, 1974, after Witherspoon had retrieved his bill of sale, Yeck and others viewed the cattle, made some purported transfers, called defendant Stewart and purported to sell the cattle to him by delivering a copy of a bill of sale from an American Federal Corp. to Stewart, who at no time had seen the original bill

1. Title 4–13, Utah Code Annotated 1953.

of sale from Witherspoon to Yeck, (which latter had not signed it as required under the Act). They received $8,500 cash from Stewart,—who appears to have been the victim of a con game. Stewart, apparently in good faith, started to load the cattle and in the middle of that operation was advised of the claims of Witherspoon and the bank. The cattle were impounded and used to satisfy the bank's security interest.

At no time did any of the principals in these unusual transactions try to secure a brand certification on the cattle,—another important facet to an act designed to stop cattle rustling.

Title 4–13–10 provides for recordation of the papers on branded cattle, and 4–13–10 makes a certificate thereof prima facie evidence of ownership. The certificate in this case has never been out of Witherspoon's possession save as an Exhibit admitted in evidence.

Title 4–13–17 provides that upon sale of livestock, its delivery shall be accompanied by a written bill of sale, describing each animal, the date and place of purchase, with the signatures of both seller and buyer; and also in the case of stock previously purchased from another, with a brand not the seller's, proof of ownership of anyone from whom it was acquired and the time of possession thereof.

It is obvious that the facts hereinabove recited reflected no compliance with the Act by anyone, and title remained in Witherspoon as much as though the cattle were stolen and transferred from thief to thief to an innocent person, who, under the terms of the Act would not acquire any ownership.[2] Our empathy attaches to Stewart, but we did not enact the subject legislation and we have no alternative but to follow its clearly expressed interdictions.

CROCKETT and TUCKETT, JJ., concur.

ELLETT, and MAUGHAN, JJ., dissent.

2. *Pugh v. Stratton*, 22 Utah 2d 190, 450 P.2d 463 (1969).