**BRUMLEY ESTATE, et al.,
Plaintiffs-Appellants,**

v.

**IOWA BEEF PROCESSORS, INC.,
Defendant-Appellee.**

**No. 81–1600.**

United States Court of Appeals,
Fifth Circuit.

May 19, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 30, 1983.*

---

* Opinion as modified will be published subsequently.

Thomas A. Graves, Mike McKool, Jr., Charles W. Cunningham, Dallas, Tex., Lucian Morehead, Plainview, Tex., for plaintiffs-appellants.

Freeman, Rothe, Freeman & Salzman, Edward W. Rothe, James T. Malysiak, Chicago, Ill., for defendant-appellee.

Before WISDOM, RUBIN, and TATE, Circuit Judges.

TATE, Circuit Judge:

In this Texas diversity case, the plaintiffs, a group of cattle sellers and feedlot operators, appeal from a take-nothing judgment entered on jury verdicts against them. The basis for their original suit was their contention that the defendant, Iowa Beef Processors ("Iowa Beef"—a slaughterhouse and meat packing plant), through its alleged agent, Heller, purchased cattle that were not properly paid for, and for which Iowa Beef is liable.

Essentially, they contest three rulings of the district court. First, relying on two prior jury determinations of Heller's status as agent of Iowa Beef in similar cases, they question the district court's refusal to apply collateral estoppel as a bar to relitigation of Heller's agency status here. Second, in the alternative, they contest the court's exclusion of evidence of these prior agency determinations as relevant evidence tending to prove that because Heller contemporaneously acted as an agent of Iowa Beef in other cases involving similar facts, he acted as agent in this particular case. Finally, they contest the district court's granting, without written reasons, a partial summary judgment holding article 6903 of the Texas Revised Civil Statutes (currently codified at Tex.Agric.Code § 146.001 (1981)), to be inapplicable to the transactions at issue. The plaintiffs argue, under this article, that the transfer of the cattle to Heller was accomplished without the formality required by Texas law, so that, under the circumstances here presented, they are entitled to an interest in the cattle superior to Iowa Beef's.

We find no reversible error in the evidentiary and collateral estoppel rulings of the district court. Accordingly, we affirm the judgment dismissing the plaintiffs' claim insofar as based upon the jury finding that Heller was not an agent of Iowa Beef. We also affirm the district court's refusal, by its partial summary judgment ruling, to admit evidence on the article 6903 claim asserted by the plaintiffs; as we interpret it, under diversity principles, following the most recent state court decision on the subject, Texas jurisprudence is to the effect that article 6903 is not applicable to the factual situation here presented.

*The Factual and Procedural Context of the Issues*

The details of the relationship between Iowa Beef and its alleged agent, Heller, have been thoroughly explicated in three prior opinions by this court involving similar transactions with different plaintiffs (other Texas cattle raisers and feedlot operators who sold cattle to or through Heller): *Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250 (5th Cir. 1980); *Valley View Cattle Co. v. Iowa Beef Processors, Inc.,* 548 F.2d 1219 (5th Cir.), *cert. denied,* 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977). Briefly, Heller carried on a regular course of business in which he would telephone Iowa Beef daily, and Iowa Beef would offer to purchase specified quantities of cattle from him at specified prices. He would then purchase the cattle from the plaintiffs (for which he paid with his personal check) and resell them to Iowa Beef. Although he sold cattle to other purchasers as well, most of his sales were to Iowa Beef.

In early 1974, due to Heller's insolvency, his personal checks to the plaintiffs, given in payment for cattle purchased, were dishonored. After collecting what they were able to from Heller's bankruptcy proceedings and surety, the plaintiffs filed this suit against Iowa Beef.

The plaintiffs contend that throughout his course of dealings with them, Heller acted as an agent of Iowa Beef. Therefore, under agency principles, they argue that Iowa Beef is liable to them for the acts of Heller and thus for the unpaid purchase price of their cattle. Iowa Beef, on the other hand, maintains that Heller was not an agent but an independent dealer and speculator, seeking to profit from the purchase and resale of cattle, and that in no way did Iowa Beef become liable for Heller's transactions.

The jury found, on the basis of extensive evidence presented by both sides, that Heller was not an agent of Iowa Beef. Although the evidence was subject to conflicting factual inferences, we are unable to say that the jury's determination was not supported by substantial evidence, nor do the plaintiffs so argue on their appeal.

## I.

However, based on jury determinations on similar facts and cattle transactions in other litigation between Iowa Beef and other parties, in which Heller was indeed found to have been the agent of Iowa Beef, the plaintiffs do raise two contentions of error in urging that the take-nothing judgment against them, founded on the jury verdicts, should be reversed: *A.* that the district court erred in its pretrial ruling rejecting the plaintiffs' contention that Iowa Beef was collaterally estopped from denying Heller's agency relationship with it, because of adverse determinations of the issue against it under virtually identical facts in similar litigation brought by other parties; and *B.* that, in any event, the district court erred in ruling to be inadmissible the judgments in these prior adjudications as evidence that Heller had acted as Iowa Beef's agent in contemporaneous and virtually identical cattle purchases from other cattle sellers of the area.

We will discuss these contentions in this Part I of the opinion. (In Part II, we will discuss the plaintiffs' remaining contention on appeal—that the district court erred in granting summary judgment, prior to trial, that dismissed the plaintiffs' claim against Iowa Beef founded on Texas article 6903, *supra cit.*)

### A. Collateral Estoppel—No Abuse of Discretion in Failing to Apply Here

This appeal marks the fourth time that this court has considered the substantially similar question of the liability of Iowa Beef to various Texas cattle folk arising from the transactions of Heller. In the first two cases before this court, we reviewed and affirmed jury determinations that Heller *had* acted as Iowa Beef's agent. *Valley View, supra; Lubbock Feed Lots, supra.* In the third case, on the other hand, we affirmed a district court's finding, after a non-jury trial, that Heller had *not* so acted. *Rufenacht, supra.* In that third case, we also upheld the district court's exercise of discretion in failing to give collateral estoppel effect to the two earlier contrary judgments. *Id.* at 204.

■ Now, the plaintiffs contend that the district court erred in *this* case by failing to apply collateral estoppel to preclude a relitigation of the agency issue. However, we again find that the district court did not abuse its discretion.

■ The use of offensive collateral estoppel, in which a defendant is prohibited from relitigating an issue previously decided adversely to him with a different plaintiff, *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), is permitted in the discretion of the district court. *Rufenacht, supra,* 656 F.2d at 202. However, as noted in *Rufenacht,*

> [a]pplicability of collateral estoppel is conditioned upon three requirements: (1) that the issue to be concluded be identical to that involved in the prior action; ...

656 F.2d at 202. In rejecting the application of the doctrine in *Rufenacht,* this court affirmed the district court's finding that there was no true identity of issues: "There is no doubt that the [cattle] transactions ... were similar in nature and close in time. But they were not identical." *Id.* at 203. This court there compared other cases in which the doctrine had been applied and generally concluded that,

> [i]n each instance [where] estoppel applies there is an actual identity of issues—the legality of one proxy statement, the negligence arising from one incident, the execution of one guarantee—as opposed to the cases at bar which involve separate albeit similar sales of cattle.

*Id.* Similarly in this case, a series of transactions similar but not identical to the ones at issue in the other cases were before the district court. The district court therefore

concluded that the lack of identity of issues, properly found controlling in *Rufenacht,* foreclosed the application of the doctrine in the present case also.

The plaintiffs contend, however, that the situation here is different from that in *Rufenacht,* and therefore more strongly warrants application of the doctrine. They point to testimony of various witnesses, Heller included, to the effect that Heller's relationship with Iowa Beef during the period of the transactions at issue in this case is exactly the same as it was in all of the other transactions occurring during this time period. The plaintiffs contend that this establishes the necessary identity of issues (i.e., the *one* agency relationship) and requires the application of collateral estoppel.

This argument overlooks, inter alia, another factor here present: The testimony referred to above also establishes that Heller acted identically in the transactions that led to the *Rufenacht* decision itself, in which Heller was determined *not* to have acted as an agent. We can see no justification for granting collateral estoppel effect to two judgments and ignoring a third contrary judgment. The presence of the *Rufenacht* decision militates against application of the collateral estoppel doctrine here, and, if only for this reason, we can see no abuse of discretion by the district court in failing to apply it.

B. *The Prior Judgments As Evidence— Exclusion Was Not An Abuse of Discretion*

The plaintiffs next contend that the prior judgments finding agency, *Valley View* and *Lubbock Feed Lots,* should have at least been admitted into evidence as probative of agency status in the present case. The district court excluded the evidence upon finding that it was "highly prejudicial". The district judge focused on the fact that, as with the collateral estoppel claim, the transactions involved in the prior decisions were distinguishable from the transactions involved in this case. The court therefore apparently found them to be unduly prejudicial in light of their questionable probative value.

▆▆ Assuming without deciding that the prior agency determinations could have been admitted into evidence in some form, we defer in this case to the discretion of the district court. Under Rule 403 of the Federal Rules of Evidence, a judge is permitted to exclude relevant evidence if he finds that its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury". Fed.R.Evid. 403. And in making this determination, a district judge is given broad discretion:

> This is a question of legal relevance, a matter on which the trial judge has wide discretion, and which the appellate court will not reverse unless the trial judge has clearly abused his discretion.

*Wright v. Hartford Accident & Indemnity Company,* 580 F.2d 809, 810 (5th Cir.1978).

Several factors support the trial judge's determination of inadmissibility. Initially, we would note that the prior jury determinations are not highly probative in this case. The jury here was presented with substantially the same evidence as was presented in those cases, and as this court there noted, "[t]he body of evidence gravitates in two different directions." *Valley View, supra,* 548 F.2d at 1224. *See also Lubbock Feed Lots, supra,* 630 F.2d at 271.

▆▆ Under certain circumstances, evidence of prior acts may be introduced if they tend "reasonably to show the purpose and character of the particular transactions under scrutiny," *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 705, 68 S.Ct. 793, 805, 92 L.Ed. 1009 (1948). The decisions relied upon by the plaintiffs, however, do not support the plaintiffs' position here. In both *Cement Institute, supra,* and in *Spartan Grain & Mill Company v. Ayers,* 517 F.2d 214, 218–19 (5th Cir.1975) (the only Fifth Circuit decision cited), for instance, evidence of prior transactions was admitted to show a routine and continuous course of dealings. In the present case, however, it is undisputed that Heller transacted all of his

business in a particular routine fashion, and, moreover, that he transacted his business with these plaintiffs in the same fashion. Evidence that he acted in the same manner with other persons is not highly probative of the issues here tried, where it is so admitted, but where the inference to be drawn from this course of dealing is a factually disputed issue susceptible of opposing inferences from the evidence actually before the present trial jury. In our prior decisions, we ourselves noted the inconclusiveness of the evidence as establishing an agency relationship, and we do not now find it to be highly probative that two juries in other cases concluded that agency status existed.

Substantially similar evidence was presented to this jury for its own separate and independent analysis as trier of fact. Undue prejudice may have been occasioned the defendant by the high possibility that more probative value than would have been warranted would have been given to the prior jury determinations on similar conflicting evidence had they been admitted.

Moreover, the possibility that the present jury would have been misled or confused would have been presented by admission of the two prior jury determinations. Neither party attempted to introduce the *Rufenacht* decision (the third case arising from these cattle transactions), in which a district judge determined that Heller had *not* acted as an agent of Iowa Beef. In the absence of this contrary judicial determination, the *Valley View* and *Lubbock Feed Lot* decisions, finding agency, appear considerably more convincing than they in actuality are. When the three decisions are viewed together, it becomes apparent, not only that the two alone do not deserve collateral estoppel effect, but also that admission into evidence of the prior decisions creates a high possibility of jury confusion. When viewed together—two determinations in favor of agency status and one against—their probative value is even less strong than it would be if two of them were viewed separately (as was initially attempted by the plaintiffs), and could quite possibly have led to confusing considerations essentially irrelevant to the task of the present jury: to decide on the facts before it, whether or not Heller was an agent of Iowa Beef.

Accordingly, we uphold the district court's exercise of discretion in refusing to admit evidence pertaining to the prior determinations of agency (or lack thereof).

## II.

The plaintiffs' final contention on appeal is that the district court erred in granting what they characterize as a summary judgment, without written reasons, that dismissed their cause of action insofar as founded upon article 6903 of the Texas Revised Civil Statutes (now codified at Tex. Agric.Code § 146.001 (1981)).

Article 6903 provides that "[u]pon the sale or transfer of any [cattle, horses, mules, etc.] in this State, the actual delivery of such animals shall be accompanied by a written transfer to the purchaser from the vendor, or party selling, giving the number, marks and brands of each animal sold and delivered. Upon the trial of the right of property in any such animal, the possession of such animal without written transfer shall be prima facie illegal."

The plaintiffs' complaint alleges that Heller did not obtain from them any written transfer, bill of sale, or other appropriate indicia of title for the cattle purchased; and that he then likewise transferred the cattle to Iowa Beef without such written sale or indicia of title. The complaint further alleges that the checks issued by Heller in payment of the purchase price were dishonored, and that he never acquired title to the cattle and was never authorized to transfer them to Iowa Beef, and that Iowa Beef knew or, in the exercise of ordinary care, should have known that Heller did not own and could not transfer title to the cattle to Iowa Beef.

The plaintiffs argue that since the requirements of article 6903 (that a written transfer accompany the delivery of the cattle and identify them by "number, marks and brands") were not satisfied in this case, they therefore retain an interest in the cat-

tle sold superior to that of Iowa Beef. The only documents transferred with the sales here were invoices and scale tickets that did not state the marks and brands of the cattle.

Iowa Beef maintains, however, that article 6903 was repealed by subsequent Texas legislation and, in the alternative, that the invoices in this case satisfy the requirements of the article. Iowa Beef also argues that the Texas article does not apply to the cattle transactions here because they in actuality took place in the state of Kansas.

### A. Procedural Posture of District Court's Ruling

The trial court initially denied cross-motions for summary judgment on the 6903 arguments on November 17, 1977. However, four years later, in a pretrial conference on the day of trial, November 19, 1981, the district judge granted what the plaintiffs characterize as a partial summary judgment on this claim in favor of Iowa Beef, and ruled that no evidence would be admitted on this issue. Neither the ruling itself, nor the reasons therefor, however, appear in any form in the record.

In the initial denial in 1977, of cross motions for summary judgment on the issue, the district court had found (1) that article 6903 was applicable to the case, (2) that it was not superseded by the adoption in Texas of the Uniform Commercial Code, and (3) that compliance with article 6903 was a question of fact remaining to be determined in the case. Subsequently, and in accord with this ruling, the plaintiffs submitted requested jury interrogatories on the question whether the invoices were sufficient to "identify and segregate" the cattle. Also in accord with this ruling is the pre-trial order, signed by the district judge and by attorneys for both parties indicating that among the issues of fact and law to be determined at trial was the question of the sufficiency of the documents to satisfy the article.

However, on the day of the trial four years after the defendant's motion for summary judgment on the issue had been denied, the district court ruled that evidence on the article 6903 claim would not be admitted. Although there is no minute entry or other notation of the district court's action, the reference to the ruling is contained in an offer of proof by the plaintiffs of evidence that would prove the plaintiffs' article 6903 cause of action as pleaded. The offer of proof was made during the trial, at which time the plaintiffs' counsel stated:

> This offer of proof is made by Plaintiffs with respect to the following evidence, which the District Court ruled, *in a pretrial conference,* would not be admissible in the trial of this action. The evidence which Plaintiffs intended to offer was relevant to their claim under Article 6903 of the Texas Revised Civil Statutes.

(R. XXI, p. 1450) (emphasis added).

We were initially given some concern by the informal and unexplained basis for this ruling, as well as the apparent lack of a procedural basis, given the circumstance that the allegations pleading the article 6903 cause of action had not been subjected to attack for failure to state a claim, Fed.R. Civ.P. 12(b)(6), or by motion for judgment on the pleadings, *Id.,* Rule 12(c), or by motion to strike, *Id.,* Rule 12(f). We accept, however, the plaintiffs' characterization of the ruling as a reconsideration by the district court of its earlier denial of summary judgment dismissing the Article 6903 claim, and a grant of the defendant's previously filed motion for summary judgment. The district court's reconsideration seems to have resulted during chambers argument in a pretrial conference, and it presumably resulted from the district court's greater familiarity with the issue stemming from its conduct of related litigation (*see* note 1 *infra*) in the interval.

In their brief in this court, the plaintiffs state that the basis for the district court's ruling was the court's acceptance of Iowa Beef's argument that Article 6903's written formality requirement in the sale of cattle had been impliedly superseded by Texas' adoption of the Uniform Commercial Code in 1967. Tex.Bus. & Com. Code §§ 1.01 *et seq.* (1967) ("Texas U.C.C.") Brief for Appellants, pp. 9, 13.

■ The plaintiffs assert that the failure of the district court to provide written reasons for the granting of summary judgment in this case require that this court vacate the judgment and remand to the district court for the making of this determination. In doing so, they rely on *Hanson v. Aetna Life & Casualty,* 625 F.2d 573, 575 (5th Cir.1980), wherein it is stated that since,

'[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 and 56,' [citations omitted], their absence here is not, of itself, fatal. Even so, 'the parties are entitled to know the reasons upon which [summary] judgment[s] ... are based.' [citations omitted], if for no other purpose than to secure meaningful appellate review. [citations omitted]. Although our prior admonitions have been precatory in character [citations omitted], we have in practice insisted that district courts record—however informally—their reasons for entering summary judgment, at least where their underlying holdings would otherwise be ambiguous or inascertainable.

*See also, Estate of Smith v. Tarrant County Hospital District,* 691 F.2d 207, 209 (5th Cir.1982).[1]

■ Where, as here, however, the facts insofar as relevant to our affirmance of the ruling (see below) are undisputed, and the applicable law may be ascertained and applied to these undisputed facts, we conclude that, as stated in *Hanson, supra,* the absence of reasons is "not, of itself, fatal." 625 F.2d at 575. In the present instance, the plaintiffs-appellants concede the reason for the district court's ruling (*i.e.,* that because of the adoption of the Texas U.C.C. in 1967, article 6903's former requirement of written formalities with regard to cattle sales is no longer applicable under the facts as presently pleaded and as before the district court at the time the motions for summary judgment were initially decided in 1977), and we have the full record upon which the ruling was based. A remand for the district court to formally articulate the reasons for its grant of summary judgment on the article 6903 claim would serve neither of the functional purposes motivating our insistence upon the desirability of articulated reasons—to assure "meaningful appellate review", *Hanson, supra,* 625 F.2d at 575, and to "minimize duplication of judicial effort", *Melancon v. Insurance Company of North America,* 482 F.2d 1057, 1059 n. 4 (5th Cir.1973)—and we will therefore now review the district court's ruling on its merits.

### B. *The Article 6903 Claim: Summary Judgment Proper?*

■ We ultimately conclude that the district court properly granted summary judgment. For reasons to be shown, assuming at least for purposes of argument that article 6903 was not impliedly repealed by the enactment of the Texas U.C.C.,[2] we find

---

1. The plaintiffs also contest the district court's granting of summary judgment on the ground that the 10-day notice and hearing provisions of Rule 56, Fed.R.Civ.P. 56, were not followed. *Capital Films Corporation v. Charles Fries Productions, Inc.,* 628 F.2d 387, 391 (5th Cir.1980). However, in that case, no motion for summary judgment was made by either party on the issues decided sua sponte by the district judge, and no notice or hearing on those issues was provided. In this case, on the other hand, cross motions for summary judgment were made by both parties, albeit four years before the motion was granted, and a hearing was held on the 6903 claim. In addition, the district court had, in the four year interval, tried the related *Lubbock Valley* case and heard similar motions for summary judgment presented by some of the same attorneys for both parties. No com-

plaint is made that the plaintiffs' counsel did not receive some prior notice that the district court was reconsidering its earlier ruling, and in fact did so, during the pretrial conference attended by counsel for both parties. We are unable to say, therefore, that the plaintiffs did not receive the requisite notice and an opportunity to be heard before summary judgment was rendered against them. *Cf., Barker v. Norman,* 651 F.2d 1107, 1118–19 (5th Cir.1981).

2. Section 2.102 of the Texas U.C.C. provides that,

Nor does this chapter impair or repeal any statute regulating sales to consumers, farmers *or other specified classes of buyers.*

(emphasis added). This clause of the Utah U.C.C. has been interpreted by the Utah Supreme Court as protecting a similar Utah state

that as most recently interpreted by the Texas supreme court the controlling issue is not whether a formal bill of cattle sale has been executed but rather what the intent of the parties was, and that under the Texas U.C.C. the statutory intent (unless otherwise explicitly agreed) is that title passes upon physical delivery of the cattle.[3]

■ In this case, the plaintiffs rely primarily on older Texas jurisprudence to support their argument that without the transfer of a written bill of sale with the cattle, they retain a superior right in the transferred cattle, for which they were not paid, than does Iowa Beef. *See Black v. Vaughan,* 70 Tex. 47, 7 S.W. 604 (Tex.1888); *Wells v. Littlefield,* 59 Tex. 556 (1883); *Goode v. Martinez,* 237 S.W.2d 576 (Tex.Civ. App.1922); *Swan v. Larkin,* 8 Tex.Civ.App. 421, 28 S.W. 217 (Tex.Civ.App.1894). *See also John Clay & Co. Livestock Commission v. Clements,* 214 F.2d 803, 806 (5th Cir. 1954). However, the latest and most authoritative expression of state law applicable to the facts of a case is controlling. *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239, 245 (5th Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

In the most recent decision in *Valley Stockyards Company v. Kinsel,* 369 S.W.2d 19 (Tex.1963), the Supreme Court of Texas was presented with facts basically indistinguishable from those in the present case. In that case, a cattle seller, Kinsel, sold cattle to a buyer without a bill of sale, and received a worthless check in payment. The buyer then sold the cattle to a stockyard. Kinsel subsequently sued the stockyard, contending that the latter was liable to him for the amount of the original buyer's unpaid checks.

The Texas supreme court, although without specifically addressing article 6903, held that the dispositive question in that case was the factual determination of whether Kinsel had intended to pass title to the buyer when he delivered the cattle, or whether he had intended that the passage of title be conditional on the subsequent honoring of the check by the bank. *Id.* at 20. The court indicated that if Kinsel had intended to pass title to the cattle by delivery, then title had thereby passed, and the stockyard had obtained better title to the cattle than was retained by Kinsel. As noted by the dissent in that case, article 6903 was applicable to the facts there presented. *Id.* at 27.

The Texas Supreme Court, therefore, did not consider the absence of a bill of sale, and the corresponding applicability of article 6903, to be determinative of the rights of the parties under those circumstances. Instead, the court considered dispositive the application of the facts to the *then* (and subsequently legislatively repealed, see below) Texas general legal doctrine that where a seller receives a check in payment, he is presumed to intend to retain title to

cattle statute from supersession by the U.C.C., *Pugh v. Stratton,* 22 Utah 2d 190, 450 P.2d 463, 465 (Utah 1969). *But see Wilson v. Burrows,* 27 Utah 2d 436, 497 P.2d 240, 242 (Utah 1972).

The plaintiffs' argument that article 6903 was not superseded in part similarly depends upon Texas U.C.C. § 2.102 and upon the additional factor that article 6903 was recodified by the Texas legislature in 1981 (without substantive change) in an attempt to eliminate "repealed, duplicative, unconstitutional, expired, executed, and other ineffective provisions...." Tex.Agric.Code § 1.001 (1981). The reenactment of the statute is argued to indicate that it was not one of those considered by the legislature to have been "repealed" or "expired". *Sayles v. Robison,* 103 Tex. 430, 129 S.W. 346, 348 (Tex.1910). And finally, the general repealing article of the Texas U.C.C., § 10–103

(repealing all laws in conflict therewith), may not require a different conclusion; Texas courts do not favor general repealers in the absence of strong repugnance between the new and existing statutes and, if possible, the statutes are construed so as to give effect to both. *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 139 (Tex.1962); *Standard v. Sadler,* 383 S.W.2d 391, 395 (Tex.Civ.App.1964). *See also Pfluger v. Colquitt,* 620 S.W.2d 739, 741 (Tex.Civ.App. 1981), writ ref'd n.r.e. (reconciling Texas U.C.C. and requirement of Texas Motor Vehicle Certificate of Title Act).

3. Deciding as we do that article 6903 is not applicable to the factual situation here presented, we express no opinion on the other contentions of Iowa Beef, *e.g.,* that article 6903 does not apply to a sale of cattle in Kansas.

the goods sold until the check is honored by the drawee bank. The court held that this presumption could be rebutted by facts to the contrary, and that it was for the trier of fact to determine the "controlling question" of the intent of the parties to the transaction. By so holding what was the "controlling question" for review, the court thus concluded that if Kinsel had intended to pass title by delivery, his sale of cattle was valid as to him despite the absence of a bill of sale, and the stockyard was not liable to him for the unpaid purchase price of the cattle.

It is true that the majority opinion did not mention article 6903, nor did it address the statement made in the dissenting opinion to the effect that article 6903 was applicable to the cattle sales in the counties there at issue. The issue was, nevertheless, apparently presented to the court and rejected by it.[4] No other Texas court has made reference to article 6903 (now § 146.001 of the Texas Agriculture Code) since the Texas supreme court's decision in *Kinsel.*

 Thus, as most recently interpreted in 1963 by the Texas supreme court, article 6903's requirement—that a written descriptive bill of sale accompany the delivery of cattle sold—does not apply against third persons who purchase from the buyer, where in fact there has been an intended sale of the cattle by the seller; the dispositive issue there being only whether the seller who accepted a later dishonored check intended to retain title in the cattle until the check was paid.

C. *The Effect of the Texas U.C.C.*

 Article 6903 does not itself purport to regulate this dispositive issue, nor the effect of payment by a check that is later dishonored. Subsequent to this 1963 *Kinsel* decision, however, the Texas legislature enacted the Texas U.C.C. in 1967, prior to the 1974 cattle transactions here in issue. This statutory enactment specifically provides statutory principles, to be cited, that are applicable to whether Heller and Iowa Beef acquired ownership of the cattle, despite Heller's subsequent dishonor of the checks paid to the plaintiffs for their purchase price. These Texas U.C.C. provisions, which are not in conflict with article 6903, are applicable to the present cattle sales and are dispositive in determining that Iowa Beef obtained good title from Heller to the cattle he had purchased from the plaintiffs, free of any claim by them.

 Section 2.401(b) of the Texas U.C.C., as enacted in 1967 and unchanged to date, provides that,

[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. . . .

This Texas U.C.C. statutory provision has been applied in Texas to a sale of cattle that is paid for by a check that is later dishonored. *In re Samuels & Co., Inc.,* 526 F.2d 1238, 1246–47 (5th Cir.) (en banc) (Texas law applied), *cert. denied sub nom. Stowers v. Mahon,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Miles v. Starks,* 590 S.W.2d 223, 225 (Tex.Civ.App.1979 writ ref'd n.r.e.), *cert. denied sub nom. Hartford Accident & Indemnity Company v. Miles,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). And while an unpaid seller arguably has the right to reclaim his cattle, *Sorrels v. Texas Bank and Trust Company of Jacksonville, Texas,* 597 F.2d 997, 1000 (5th Cir.1979); *Ranchers and Farmers Livestock Auction Company of Clovis, New Mexico v. First State Bank of Tulia,* 531 S.W.2d 167, 169 (Tex.Civ.App.1975 writ ref'd n.r.e.), that right is limited to a 10-day period, *see* Tex. U.C.C. §§ 2.507, 2.702, and it cannot have any effect on the rights acquired by subsequent bona fide purchasers. *Sorrels, supra,* 597 F.2d at 1001; *Sam-*

4. The issue was apparently before the court inasmuch as article 6903 was addressed by the dissenting justices, and inasmuch as the intermediate court opinion there reversed had relied heavily on *John Clay & Co. Livestock Commis-* *sion v. Clements,* 214 F.2d 803 (5th Cir.1954), in which article 6903 was in part the basis of the opinion. *Valley Stockyards Company v. Kinsel,* 360 S.W.2d 817, 819 (Tex.Civ.App. 1962).

*uels, supra,* 526 F.2d at 1244. *See also* Tex.Bus. & Com. Code § 2.403(a) (1967) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value.").

■ Texas U.C.C. § 2.511(c) provides that a payment for goods by check is conditional and is defeated *"as between the parties"* by dishonor of the check. Nevertheless, whatever right may be conferred to avoid the sale as between the parties themselves, the seller unpaid by virtue of the dishonored check cannot defeat the title of a good-faith third-person purchaser from the buyer. *Leif Johnson Ford, Inc. v. Chase National Bank,* 578 S.W.2d 792, 794 (Tex. Civ.App.1978); *Samuels, supra,* 526 F.2d at 1242, 1246. This result obtains by virtue of Texas U.C.C. § 2.403, which provides that,

> [a] person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> * * * * * *
>
> (2) the delivery was in exchange for a check which is later dishonored. . . .

■ As to Iowa Beef's good faith in purchasing the cattle from Heller, the most that the factual showing indicates is that Iowa Beef should have known at the time the cattle were purchased by Iowa Beef that Heller had not yet paid his sellers for their cattle. Under the Texas U.C.C., in sales transactions, " 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Texas U.C.C. § 2.103(a)(2). For purposes of the Texas U.C.C., the good faith of a purchase "does not expressly or impliedly require lack of knowledge of third party claims, . . . depart[ing] from the common law in this regard." *Peerless Equipment Company v. Azle State Bank,* 559 S.W.2d 114, 116 (Tex.Civ.App.1977); *Samuels, supra,* 526 F.2d at 1243–44. Considering the undisputed fact that Iowa Beef paid Heller the full value of the cattle at the time of their delivery or shortly thereafter, *see*

*Samuels, id.,* summary judgment was not precluded by any factual issue as to Iowa Beef's good faith as measured by these Texas U.C.C. provisions.

*Conclusion*

Accordingly, we AFFIRM the jury's determination that Heller was not Iowa Beef's agent in this case, and we likewise find that the district court's grant of summary judgment without written reasons was not reversible error under the circumstances here presented.

AFFIRMED.