NO. 07-01-0331-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



FEBRUARY 5, 2002



______________________________




RAUL MARTINEZ, APPELLANT



V.



WELDON EDWARDS D/B/A WELDON EDWARDS HEREFORDS, APPELLEE




_________________________________



FROM THE 110TH DISTRICT COURT OF DICKENS COUNTY;



NO. 3868; HONORABLE JOHN R. HOLLUMS, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Raul Martinez has appealed from a judgment rendered against him in a
personal injury cause of action. For the reasons expressed, we dismiss the appeal.

 Notice of appeal was filed by appellant on July 31, 2001. Two requests for
extension of time were thereafter granted to the court clerk for the filing of the clerk's
record, and one request for extension of time was granted to the court reporter for the filing
of the reporter's record. Each time, we were notified that appellant had not paid or made
arrangements to pay for the record. The most recent extensions gave the court clerk and
the court reporter until December 21, 2001, to file the records. 

 However, we were notified by letter dated January 9, 2002, from the court clerk that
she has had no communications from appellant regarding payment for the preparation of
the record and, as of this date, no records have yet been filed in this appeal. By letter
dated January 17, 2002, we notified appellant that if an arrangement had not been made
to pay for the records within ten days from the date of the letter, the appeal would be
subject to dismissal. Tex. R. App. P. 42.3. To date, we have received no response. 

 Accordingly, the appeal is hereby dismissed. 

 Per Curiam

Do not publish. 



lass="WPNormal">  Gorrell agreed that it was Bradley’s “habitual” practice on receipt of Coleman cattle\
to identify them with a “C” ear tag. A list prepared by Bob Arnold, Carter’s agent for cattle\
operations in Texas, was admitted. According to the list, Carter received 109 head of cattle\
on January 21, 2005, bearing a “C” tag.
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-06-0436-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 24, 2008

______________________________


KEVIN CARTER, APPELLANT

V.

COOKIE COLEMAN CATTLE COMPANY, INC., APPELLEE

_________________________________

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 9351; HONORABLE GORDON H. GREEN, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

OPINION
 
          Appellee Cookie Coleman Cattle Company, Inc., recovered judgment against
appellant Kevin Carter for conversion of cattle. On appeal, Carter contends as a matter
of law he was a good faith purchaser for value of the cattle and could not, therefore, have
committed conversion. Finding the evidence insufficient to conclusively establish this
claimed status, we affirm.

Background
          On January 6, 2005, Rob Bradley invoiced for delivery to Carter 129 head of cattle
at an average weight of 498 pounds. Bradley was an order buyer of cattle. That is, he
purchased and shipped cattle for a customer. To finance the transaction, Carter obtained
a loan from the Farm Service Administration which required submission of the Bradley
invoice before advancing the loan proceeds. Carter delivered the check to Bradley on
January 12, 2005. 
          Coleman was a cattle buyer. On January 16, 2005, it invoiced for sale to Bradley
113 head of cattle at an average weight of 512 pounds. On January 16, 2005, Coleman
shipped the cattle to Bradley from Texarkana, Texas, to Clovis, New Mexico. According
to its president Chester Daniel “Cookie” Coleman, the distance of shipment could cause
cattle to shrink three to five percent. On January 18, 2005, Bradley tendered Coleman a
check made for the full purchase price of $66,937.83. 
          Bradley delivered 109 head of cattle to Carter on January 21, 2005. There was
testimony that Bradley placed a “C” ear tag on cattle received from Coleman and the cattle
Bradley delivered to Carter bore a “C” ear tag. Bradley died on January 24, 2005. By
document dated January 26, 2005, Coleman’s bank gave notice that Bradley’s bank
refused payment of Bradley’s check for the cattle purchased. Bradley’s estate was without
funds sufficient to meet Coleman’s payment demand. 
          Carter ultimately sold the cattle and repaid the FSA. Coleman sued Carter for
conversion


 and declaratory relief. Following a bench trial, the court rendered judgment
for Coleman for $64,568.35 plus attorney fees of $17,750. Carter requested findings of
fact and conclusions of law which were not filed by the trial court.


 This appeal followed.
DiscussionIn his live answer Carter denied liability and affirmatively alleged the status “bona
fide purchaser for value without notice of [Coleman’s] claims.”


 At trial, the parties
substantially disputed the effect of this allegation. Carter asserted it authorized proof of
status as a “good faith purchaser for value” according to section 2.403 of the Business and
Commerce Code. See Tex. Bus. & Comm. Code Ann. § 2.403 (Vernon 1994).


 
Conversely, Coleman argued Carter’s pleading limited him to proof of the common law
good faith purchaser defense.


 To qualify as a good faith purchaser under a common law
theory, it was for Carter to prove: (1) he purchased cattle from Bradley in good faith, (2) for
valuable consideration, and (3) made the purchase without actual or constructive
knowledge of any outstanding claims of a third party. NRG Exploration, Inc. v. Rauch, 671
S.W.2d 649, 653 (Tex. App.–Austin 1984, writ ref’d n.r.e.). To attain good faith purchaser
status under Section 2.403, a party must be: (1) a purchaser, (2) that gave value, and (3)
acted in good faith. B & CC § 2.403(a). Good faith purchaser status under section 2.403
does not require absence of knowledge of third party claims and on this ground the UCC
deviates from the common law. In re Samuels & Co., 526 F.2d 1238, 1243-44 (5th Cir.
1976); Rogers v. Ricane Enters., 930 S.W.2d 157, 175 (Tex.App.–Amarillo 1996, writ
denied). 
          On appeal, Coleman renews his contention that Carter did not properly plead the
claimed good faith purchaser for value status under § 2.403(a) and accordingly waived
reliance on the theory. Because discussion of that contention is not necessary to our
disposition of the appeal, we do not reach it.
          Carter presents two issues for review which we will discuss jointly:
The Trial Court erred in its finding that Kevin Carter was not a bona fide
purchaser for value in the trial case.
 
The Trial Court erred in its finding that Kevin Carter did not satisfy all legal
requirements of a bona fide purchaser for value and erroneously entered
Judgment in favor of Appellee.
 
          We interpret Carter’s appellate complaint as a legal sufficiency challenge of the
evidence supporting the court’s adverse finding in the judgment on his claim of good faith
purchaser status.


 
          Because the trial court did not file findings of fact and conclusions of law in a
separate document, we give effect to the finding in the judgment that Carter was not a
good faith purchaser. See Hill v. Hill, 971 S.W.2d 153, 157 (Tex.App.–Amarillo 1998, no
pet.) (under Rule of Civil Procedure 299a, findings contained in judgment lack authority
only to extent of conflict with those in separate document). We review a trial court’s fact
findings under the same legal and factual sufficiency standards applicable to jury findings. 
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). An appellant attacking the legal
sufficiency of evidence supporting an adverse finding on which he had the burden of proof
must show on appeal that a contrary finding was established as a matter of law. Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). Carter’s matter of law issue requires we first
examine the record for some evidence supporting the trial court’s finding, crediting
evidence favoring it if a reasonable fact finder could and disregarding contrary evidence
unless a reasonable fact finder could not. See Central Ready Mix Concrete Co., Inc. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007). Anything more than a scintilla of evidence is
legally sufficient to support the court’s finding and the challenge fails. See Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996) (no-evidence challenge by party that did not
bear burden of proof on issue). But if no evidence appears to support the finding, we then
examine the entire record to determine whether the contrary proposition is established as
a matter of law. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam);
Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276
(Tex.App.–Amarillo 1988, writ denied). A proposition is established as a matter of law
when a reasonable fact finder could draw only one conclusion from the evidence
presented. See City of Keller v. Wilson, 168 S.W.3d 802, 814-16 (Tex. 2005). 
          In relevant part, section 2.403 provides:
A purchaser of goods acquires all title which his transferor had or had power
to transfer except that a purchaser of a limited interest acquires rights only
to the extent of the interest purchased. A person with voidable title has
power to transfer good title to a good faith purchaser for value. When goods
have been delivered under a transaction of purchase the purchaser has such
power even though . . . (2) the delivery was in exchange for a check which
is later dishonored.
B & CC § 2.403(a)(2) (Vernon 1994).
          The parties’ disagreement centers on the application of the statutory definition of
good faith under the facts presented. Under section 1.201, “good faith” consists of honesty
in fact and the observance of reasonable commercial standards of fair dealing. B & CC
§ 1.201(20) (Vernon Supp. 2008). The standard incorporates both subjective honesty and
objective commercial reasonableness components. B & CC § 1.201, Official UCC
Comment § 20 (Vernon Supp. 2008).


 “Fair dealing” focuses on the fairness of conduct
and not the care exercised in performance. Comment § 20.
          Carter gave conflicting testimony concerning his knowledge of Bradley’s acquisition
of the cattle at the time Carter paid Bradley. During his deposition testimony, Carter
acknowledged he knew Bradley had not acquired the cattle at the time he delivered the
check on January 12. At trial, however, Carter insisted Bradley told him then he had the
cattle.


 
          Coleman testified it was not customary in the cattle industry to pay for cattle in full
on a price per hundred-weight before delivery. He found the Carter-Bradley purchase and
sale arrangement unprecedented in his forty years in the cattle business, and agreed it was
a departure from industry standards. Bradley employee Marvin Gorrell’s deposition
testimony was read. It was to the effect that Bradley ordinarily collected a down payment
prior to the delivery of cattle. 
          The transaction at bar differs from that described in Brumley Estate v. Iowa Beef
Processors, Inc., 704 F.2d 1351 (5th Cir. 1983), cited by Carter. There, the Fifth Circuit
found Iowa Beef was a good faith purchaser under § 2.403 of cattle sold them by one
Heller, insulating Iowa Beef from liability to those sellers whose checks from Heller were
dishonored. Id. at 1362. Concluding that the evidence raised no fact issue as to Iowa
Beef’s good faith, the Fifth Circuit noted Iowa Beef paid Heller for the cattle at the time of
their delivery or shortly thereafter. The court said the most that could be said against Iowa
Beef is that the company should have known at the time it bought the cattle that Heller had
not yet paid his sellers for them. Id. Here, the trial court heard evidence that Carter,
contrary to industry practices, paid Bradley in full at the outset of the transaction, even
though Bradley had not yet assembled the load of cattle Carter thought he was buying.
          Although Carter argued at trial that Coleman had not proven that the cattle Carter
paid Bradley for were the same cattle Bradley acquired from Coleman, that fact appears
undisputed here.


 On the evidence presented, we find reasonable minds could differ as
to Carter’s status as a good faith purchaser under the statutory definition. The court’s
finding that he was not is supported by more than a scintilla of evidence. Accordingly, his
legal sufficiency challenge must fail. We overrule his appellate issues and affirm the trial
court’s judgment.
 
                                                                           James T. Campbell

                                                                                    Justice